FARMERS' LOAN & TRUST CO. *v.* FARMERS' LOAN & TRUST CO. OF KANSAS.

*(Supreme Court, Special Term, New York County.* May 4, 1888.)

INJUNCTION—TO RESTRAIN INFRINGEMENT OF CORPORATE NAME—WHEN GRANTED.
　　Plaintiff had transacted business in New York city for more than 50 years under the name of the "Farmers' Loan & Trust Company." Defendant was organized under the laws of Kansas, in 1885, under the name of the "Farmers' Loan & Trust Company of Kansas." It established an office in New York city, and advertised, omitting from its name the words "of Kansas." *Held*, that a preliminary injunction should issue restraining defendant from using its name on advertising matter in any other way than with the words "of Kansas."

At chambers. On motion for injunction.

O'BRIEN, J. This motion is made for an injunction enjoining the defendant from the use of the plaintiff's corporate name, upon the following state of facts: The plaintiff is a well-known corporation, for more than 50 years located and carrying on a large business, mostly fiduciary, in William street, in the city of New York, as a trust company. It has a splendid reputation for solvency, and is probably as well-known in this section, and throughout the country, as any institution in the city of New York. The defendant was incorporated by the state of Kansas in 1885, and its principal office is in the city of

Anthony, south-western Kansas. Its business is confined to the sale of its own securities, called debentures. It is, besides, authorized by its charter to buy and sell real estate and to loan money. Some two months ago the defendant established an office on Broadway, in this city. It does not appear that the plaintiff has ever engaged in the business in which the defendant is .engaged, or that the defendant has ever assumed to engage in a business at all similar to that of the plaintiff; nor can I, from the papers, find that, when the defendant was incorporated, the name and extensive business of the plaintiff were known to its incorporators, or that the name was adopted with the object of depriving the plaintiff of its business and rights, or that it might be mistaken for the plaintiff, or that it is defendant's intention to use this name in the transaction of business similar to the business in which plaintiff is engaged. Whatever may be the right of the defendant to have its powers increased, so as to embrace the kind of business now conducted by the plaintiff, it is evident that at the present time the business of the two corporations are entirely distinct; the one, the plaintiff, as a trust company, acting as trustee of estates, of mortgages, and other securities, etc.; the other, the defendant, being engaged in the business of selling its own securities, bonds, and mortgages and municipal securities of the far west. The affidavits, however, go far towards showing that after opening their office for business in this city, that, by means of circulars and advertisements issued by the defendant, it was intended to produce upon the public mind the impression that both corporations were one and the same. This is shown by the failure to add the word "Kansas," in its title, to such circulars, cards, and advertisements, which omission would have an undoubted tendency to have persons mistake the defendant for the plaintiff, and it is therefore clear that the court has the right and should enjoin this manner of using the name, "Farmers' Loan & Trust Company."

The remaining question, as to whether or not a corporation of this State, by being the first to adopt a name of this character, can preclude corporations in this or any other city of the United States from adopting the same or a similar name, in cases where both corporations are engaged in business in different states, is a much more difficult question. This difficulty is increased by the apparent conflict in the decisions as to how far and in what instances the use of corporate names may be enjoined. Although not technically a trade-mark, the authorities are in favor of holding that a corporate name deserves the same consideration as a trade-mark; some even going so far as to hold that it is a trade-mark, and will be protected as such. In most of these cases, however, it will be found that the use of the name was connected with some article of merchandise, and was adopted and used by a manufacturer, merchant, or corporation in order to designate the goods that they manufactured or sold, and to distinguish them from those manufactured or sold by others, to the end that they might be known in the market as his. Where a person, firm, or corporation, therefore, in the same or a similar business, endeavors to appropriate the name, or the good-will connected therewith, which has been rendered valuable, the courts have enjoined such use. But it will be noticed that the principle underlying these decisions is based upon two elements: *First,* the injury to the public, by leading them to suppose that the goods of one are the goods of the other; and, *second,* the injury to the owner of the trade-mark or name by the diversion of his trade into other channels, by the belief of the public that they are obtaining his goods. In *Colman* v. *Crump,* 70 N. Y. 573, Judge ALLEN says: "A party may have a property in—that is, an exclusive right to use— a name or symbol, to distinguish goods manufactured and sold by him from goods manufactured and sold by others, and to indicate when and by whom, and at what manufactory, the article to which it is affixed is manufactured." In *Reeves* v. *Denicke,* 12 Abb. Pr. (N. S.) 92, which was a case involving the right to use a firm name, the court said: "Indeed, the general principles which

control in cases of trade-mark are analogous and entirely applicable to the species of property which is the subject of this action." The question as to the right to use names has arisen very frequently in the cases of hotels. In the *Irving Hotel Case* it was held that the proprietor had the right to the use of this name to the exclusion of other persons in the same city. *Howard* v. *Henriques*, 3 Sandf. 725. In *McCardel* v. *Peck*, 28 How. Pr. 120, the defendants were restrained from the use of the name of the McCardel House. The court says: "The use of names and marks in business, when made valuable, were always protected by the courts, and any unlawful appropriation of them, without authority of the owner, will be restrained by injunction." In an English case (*Levy* v. *Walker*, 10 Ch. Div. 447) it is said: "It should never be forgotten in these cases, that the sole right to restrain anybody from using any name that he likes in the course of any businees that he chooses to carry on is a right in the nature of a trade-mark." In *Newby* v. *Railroad Co.*, 1 Sawy. 63, the facts were, the defendant corporation was organized, under the general laws of the state of Oregon, for the purpose of constructing and operating a railway. Prior thereto, however, another company had been incorporated under the same name, and by authority of law of the same state. The judge, in granting the injunction, said: "The corporate name of a corporation is a trade-mark, and from the necessity of the thing, and from considerations of private justice and public policy, deserves the same consideration and protection from a court of equity. Under the law the corporate name is a necessary element of the corporation's existence. Without it a corporation cannot exist. Any act which produces confusion or uncertainty concerning the name is calculated to injuriously affect the identity and business of the corporation." The case of *Manufacturing Co.* v. *Manufacturing Co.*, 32 Fed. Rep. 94, is an authority for the position that, in dealing with corporations, an imitation of a name is subject to the same rules of law which apply where the parties are unincorporated firms or companies.

While, therefore, the obligations imposed upon corporations not to use the same name is similar to the case of individuals or incorporated firms or companies, their right to do business in any manner in which an individual or firm could do, it seems to me, should be governed by the same principles. There can be no real difference in principle between the name of an individual and the name of a corporation; both being persons, and the name the necessary attribute of both. In one case the name may be conferred by parents, assumed by the person, or imposed by law. The name of a corporation is adopted by its founders, or imposed by the state. The right of each to its name is of the same character, and the name of each is used for the same purpose, and the same principle must therefore govern both. It is stated by RAPALLO, J., in *Meneely* v. *Meneely*, 62 N. Y. 427: "Every man has the absolute right to use his own name in his own business, even though he may thereby interfere with and injure the business of another bearing the same name, provided he does not resort to any artifice or do any act calculated to mislead the public as to the identity of the establishments, and produce injury to the other beyond that which results from the similarity of names." In the case of *Croft* v. *Day*, 7 Beav. 84, where the name of "Day & Martin" was enjoined, the master of the rolls expressly said: "My decision does not depend upon any particular or exclusive right the plaintiffs have to use the name of Day & Martin, but upon the fact of the defendants using their names in connection with certain circumstances, and in a manner calculated to mislead the public, and enable the defendants to obtain, at the expense of Day's estate, a benefit for himself to which he is not, in fair and honest dealing, entitled. * * * He has a right to carry on the business of a blacking manufacturer. Honestly and fairly, he has the right to the use of his own name." The cases of *Sykes* v. *Sykes*, 3 Barn. & C. 541; *Holloway* v. *Holloway*, 13 Beav. 209; *Clark* v. *Clark*, 25 Barb. 79; *Faber* v. *Faber*, 49 Barb. 357,—were decided upon the

same principle, namely, that a person cannot make a trade-mark of his own name, and thus obtain a monopoly which will prevent all others of the same name from using their names in their own business, provided they do not resort to any artifice calculated to mislead the public as to the identity of the establishments, or to produce injury to the other beyond that which results from the similarity of names.   One of the earliest cases, *Snowden* v. *Noah,* Hopk. Ch. 347, which was a suit by the National Advocate against the New York National Advocate, another newspaper, for an infringement, an injunction to restrain the use of the name was denied.   In another newspaper case the question was whether "Democratic Republican New Era" infringed the name "New Era."   An injunction was refused.   *Bell* v. *Locke,* 8 Paige, 75. In *Talcott* v. *Moore,* 6 Hun, 106, the injunction was refused.   In the case of *Publishing Co.* v. *Publishing Co.,* 25 Hun, 398, another newspaper case, it was decided that the use of a name would be protected.   This last case, and those of *Colman* v. *Crump,* 70 N. Y. 573; *Hier* v. *Abrahams,* 82 N. Y. 524, are authorities for the position that it is not necessary to establish guilty knowledge or fraudulent intent.   "It is sufficient that the proprietary right of the party and its actual infringement is shown."

All the cases cited, as well as all those referred to upon the argument, were decided upon the facts peculiar to each case.   It is difficult, if not impossible, to formulate any general principle which will be equally applicacle to all, or by which all can be rendered consistent or reconcilable; nor is it necessary, as the conflict between them is apparent only and not real.   A name, whether of an individual or corporation, as well as any other mark or symbol, will be protected in a proper case; and that irrespective of whether such name is an arbitrary one or not, if the other considerations entitling it to such protection are present.   It is evident, on the other hand, that the use of the same name would not be enjoined where the parties were doing a business thereunder entirely dissimilar and distinct; as, for instance, where one represented a banking business and another a locomotive works.   Nor could the first national bank established, enjoin every other bank from using the name "First National Bank;" nor could the Mechanics' National Bank of New York enjoin the Mechanics' National Bank of New Jersey; nor the Fulton Bank of New York, the Fulton Bank of Brooklyn.   And yet, if a bank like the Chemical Bank of New York, or any other bank had acquired in the particular city a valuable interest or proprietary right in the name, the court would not hesitate to enjoin another bank of the same name from doing business in the same city, to its detriment, and the confusion of the public.   The name "Loan & Trust Company" is not an uncommon one as applied to certain monetary institutions; and it would seem that the prefix "Farmers' " has been applied to designate companies engaged in similar business in different states; there being, according to the affidavits, no less than seven "Farmers' Loan & Trust Companies" in the United States.   It is not, therefore, such an arbitrary and exclusive designation of a particular corporation (as distinguished from a class) as would entitle it *per se* to be protected from infringement.   The defendant denies any intention of copying the name, and states that in its organization the existence of the plaintiff was not once adverted to, and that such name was chosen solely because it was an appropriate name for a corporation of this character, whose business was confined to a farming community.   Should the evidence, however, upon the trial demonstrate that the adoption by the defendant was done for the purpose of gaining any advantage from the reputation and business standing established by the plaintiff, or had it, with knowledge of plaintiff's reputation and solvency, procured in the state of Kansas a charter for the purpose of coming to New York, and engaging in a similar business, or should the arbitrary character of the name, or such an exclusive and proprietary interest of plaintiff therein, be shown, then the elements necessary to require the intervention of a court of equity would be present.

The defendant corporation received its franchises from the legislature of Kansas, and the effect of granting the injunction prayed for in this case will be to absolutely prohibit the defendant from performing its functions, or do any business whatever, because it can do no business except under its corporate name. I confess that the question here involved is not free from doubt, and therefore, in a case in which the matter in issue is the subject of fair discussion, induces me, in view of the fact that much of the evil complained of can be removed by an injunction restraining the manner of the use of the name pending the trial, to grant the motion to the extent of restraining the defendant *pendente lite* from using the name of the Farmers' Loan & Trust Company on any pamphlets or written documents or signs, or in any way other than with the words "of Kansas" connected therewith as part of its corporate name or title; thus leaving the question as to the permanent injunction to await the result of the trial of the action, when all the facts and arguments can be more fully presented. Ordered accordingly. No costs.