Argued September 16, affirmed October 5, rehearing denied November
16, 1915.

# WOOD v. WOOD.*

(151 Pac. 969.)

**Trademarks and Trade Names—Right to Use Own Name.**

1. While a natural person has an unqualified right to the use of
his family name in conducting any business, though such use be
detrimental to other individuals of the same name, he cannot com-
bine his name with others for the purpose of working a fraud.

**Trademarks and Trade Names—Unfair Competition—What Consti-
tutes—"Realty"—"Company."**

2. Plaintiffs formed the Wood Realty Company, a firm engaged
in the real estate business. Defendant, who had no associate, started
business under the name of the W. E. Wood Realty Company. There
was some confusion of mails and business, some persons mistaking
defendant for plaintiff. *Held*, that the word "realty," which is used
as a collective noun for real estate and when used in a firm title
indicates brokers engaged in the purchase and sale of real estate, and
as the word "company" indicates an associate or partnership, de-
fendant will be restrained from continuing business under such title;
the use of his name constituting unfair competition.

**Trademarks and Trade Names—Suits to Enjoin.**

3. In a suit to enjoin the infringement of a trade name, it is not
necessary to prove there was a fraudulent intent to deceive.

   [As to what words may constitute valid trade names, see
   note in 85 Am. St. Rep. 83.]

From Lane: LAWRENCE T. HARRIS, Judge.

Department 2. Statement by MR. CHIEF JUSTICE
MOORE. ·

This is a suit to enjoin the use of a trade name.
The facts are that the plaintiff H. H. Wood and a
Mr. Galey were partners and engaged at Eugene,
Oregon, as land brokers under the firm name of the
"Galey-Wood Realty Company" until October, 1912,
when Galey retired and the plaintiff Harvey Wood
succeeded him, whereupon the firm was reorganized

---

*As to limitation of right to use one's own name as trade name,
see notes in 1 L. R. A. (N. S.) 660; 28 L. R. A. (N. S.) 934.

On relief against infringement of trade name not used in connection
with manufactured article, see note in 15 L. R. A. (N. S.) 625.

REPORTER.

and continued the business at the same place as the "Wood Realty Company." The defendant W. E. Wood alone began business in the same city in May, 1913, as the "W. E. Wood Realty Company." The plaintiffs on December 26, 1913, duly filed a certificate of their assumed business name as required by statute: Gen. Laws Or. 1913, c. 154. The cause being at issue was tried, resulting in a decree as prayed for in the complaint, and the defendant appeals.

Affirmed. Rehearing Denied.

For appellant there was a brief and an oral argument by *Mr. S. D. Allen.*

For respondents there was a brief over the name. of *Messrs. Jones & Burton,* with an oral argument by *Mr. S. N. Burton.*

Opinion by Mr. Chief Justice Moore.

It is contended that the defendant was entitled to the use of his family name, and the word "realty," when applied to the business in which he was engaged, was a term of description, and, such being the case, an error was committed in granting the relief awarded. Though there is a well recognized distinction between a trademark and a trade name, these classifications are usually treated in text-books under the title of the former designation, and legal restraint is granted or denied upon a consideration of the question whether or not the similarity in the appellation is such as to constitute unfair competition: Hopkins, Unfair Trade, § 52. This author, in referring to that subject, observes:

"In using the expression 'trade name,' however, it must be remembered that it is simply a colloquial

term, used by the courts as a matter of convenience, and that it has no technical significance."

Reasonable rivalry in the pursuit of any trade or occupation usually promotes the public welfare by preventing a monopoly. It is only when the persons engaging in a contest, to secure business or to obtain employment, adopt similar trade names or select like designs as trademarks, and thus are enabled to appropriate a competitor's traffic or the fruits of his vocation whereby such conduct tends to deceive the public, that equity will intervene.

1-3. The rule generally obtains that a natural person has an unqualified right to the use of his family name in conducting any business, though such use may be detrimental to other individuals of the same name, or to corporations in the titles of which such name forms the whole or an integral part: *Russia Cement Co.* v. *Le Page,* 147 Mass. 206 (17 N. E. 304, 9 Am. St. Rep. 685). See, also, the valuable notes to *International Silver Co.* v. *William H. Rogers Corp.,* 2 Ann. Cas. 407, 415; *Martell* v. *St. Francis Hotel Co.,* 16 Ann. Cas. 593, 596.

"The name of an individual," says a text-writer, "does not constitute a valid technical trademark because, as between persons of the same or similar names, each has an equal right to use his own name in his own business, and trademarks, being property rights, are necessarily exclusive. Everyone, however, is entitled to protection against unfair competition, and no one is entitled so to use even his own name as to pass off his goods or business as the goods or business of another, thereby robbing the latter of the benefits of his goodwill and reputation and working a fraud upon the public": 28 Am. & Eng. Ency. Law (2 ed.), 384.

To the same effect, see, also, 38 Cyc. 724; Hopkins, Unfair Trade, § 51.

In *Martin Co.* v. *Martin & Wilckes Co.,* 75 N. J. Eq. 39, 50 (71 Atl. 409, 414), in discussing this subject Mr. Vice-Chancellor STEVENSON remarks:

"I think we have got beyond the notion, if it ever prevailed, that a man has an absolute right to use his name in his business shutting his eyes to the inevitable effect of such use to deceive the public generally, and to injure some other dealer in the market. The maxim, '*Sic utere tuo ut alienum non laedas,*' applies to everything that a man has, including his name."

In a note to the case of *Martell* v. *St. Francis Hotel Co.,* 16 Ann. Cas. 593, 596, it is said:

"Where a personal name has become identified with certain goods or a certain business, it is incumbent upon a person with a similar name, subsequently engaging in the same business or dealing in the same kind of goods, to take such affirmative steps as may be necessary to prevent confusion."

It will be assumed, without deciding the question, since a determination thereof is unnecessary on account of the conclusion reached on the other inquiry, that the defendant's initials, "W. E.," prefixed to a part of his assumed name, evidence an affirmative act designed to prevent confusion with the plaintiff's trade name in this particular. See, however, the case of *Walter Baker & Co.* v. *Sanders,* 80 Fed. 889, 26 C. C. A. 220, in which it was held that, where by long use the words "Baker's Chocolate" had come to mean in the minds of the public the plaintiff's goods, a subsequent maker of chocolate with the same name was not entitled to use that name, whether with his given name or its initials, in such manner as to announce that the goods he sold were "Baker's Chocolate."

The plaintiff H. H. Wood, referring to the defendant, testified as follows:

"Directly after I heard that he was engaged in that business under that name, I remonstrated with him, and I asked him to desist, that we would have a confusion of business, we were doing business under that name, and he said that he had his stationery out, and I asked him if he couldn't cancel the stationery and do away with it in some way, and he declined to do that. Finally he told me—well, I spoke to him about it afterward, whether at that time or at the time afterward I spoke to him about it, and he says he thought he had a perfect right to use his own name in his own business. I told him he had no right whatever to use our firm name. I says, 'Who is your company? Have you a partner?' 'No,' he says, 'but I expect to have.' I says, 'If you haven't a partner, you are not a company.'"

In *Fuller* v. *Huff,* 104 Fed. 141, 143 (51 L. R. A. 332, 334, 335, 43 C. C. A. 453, 455), in speaking of a generic term used in a trademark, the court says:

"The term 'health food' means healthy food, or health-producing food, and is therefore descriptive of quality, and cannot be a technical trademark, either with or without the word 'company,' any more than the word 'nutritious wine' could be a valid trademark. If a case against the defendant exists, it is one of unfair competition; and the law upon the subject of the adoption by a competitor of names or words descriptive of quality, which have previously become trade names, and which adoption will constitute unfair competition, is correctly stated by the counsel for the defendant as follows: 'When such a mark, name or phrase has been so used by a person in connection with his business or articles of merchandise as to become identified therewith, and indicate to the public that such articles emanate from him, the law will prohibit others from so using it as to lead purchasers to believe that the articles they sell are his or as to

obtain the benefit of the market he has built up thereunder.''

''The same statement of the law is contained in the case of *Reddaway* v. *Bunham,* [1896] App. Cas. 199, decided by the House of Lords in 1896, in which it was held that one person was not entitled to pass off his goods as those of another by selling them under a name likely to deceive purchasers, whether immediate or ultimate, into the belief that they were buying the goods of the former, although the name was, in its primary sense, merely a true description of the goods. The subject of the unlawful use by competitors of the name under which a rival has previously presented himself to the public and has gained a business reputation, although the name is not strictly a trademark, and is either geographical or descriptive of quality, has been frequently of late before the courts, which have demanded a high order of commercial integrity, and have frowned upon all filching attempts to obtain the reputation of another.''

Further in the opinion it is observed:

''Although the intent of the defendant's principal when it commenced to use the name 'Health Food' may have been innocent, the continuance, after it had learned of the complainant's prior use, indicates its deliberate intention to use the name without reference to the complainant's possible prior rights.''

A lexicographer defines the word ''realty'' thus:

''A term sometimes used as a collective noun for real property or estate—more generally to imply that that of which it is spoken is of the nature or character of real property or estate'': Bouvier's Law Dictionary (Rawle's 3 ed.).

The term ''realty,'' as used by the defendant, when employed to qualify the word ''company,'' evidently means an offer on his part to negotiate for others the purchase and sale of land, the obtaining of loans of money to be secured by real property, etc. The ex-

pression "realty," as thus applied is descriptive of a class of business in which the parties hereto are engaged. Such term, therefore, cannot be a part of a technical trade name, but its use, in the same locality, subsequent to the plaintiffs' adoption of the word, tends to constitute unfair competition in that, as the testimony discloses, owners of real property have been led to believe that the term related to the plaintiff's assumed name and by this means the defendant may have been and, unless restrained, will be enabled to obtain the benefit of the goodwill which his rivals have built up.

It will be remembered that the defendant, having no partner in the real estate business, adopted as a part of his trade name the word "company," which indicates that he had formed, with other individuals, an association or partnership: *Goodyear's India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598, 602 (32 L. Ed. 535, 9 Sup. Ct. Rep. 166). The employment by the defendant of the word "company," when there was no other member, evidences a purpose to simulate the plaintiffs' assumed name, and particularly so when, after the defendant was notified of the prior legal adoption of such word as a part of his rivals' trade name, he persisted in taking advantage of the term, thereby indicating a deliberate intention to continue such use without reference to the plaintiffs' right: *Hygeia Distilled Water Co.* v. *Consolidated Ice Co.* (C. C.), 144 Fed. 139; *Regis* v. *H. A. Jaynes & Co.,* 185 Mass. 458 (70 N. E. 480). But, however this may be, it has been held that, in a suit to enjoin the infringement of a trade name, it is not necessary to prove that there was a fraudulent intention to deceive: *Viano* v. *Baccigalupo,* 183 Mass.

160 (67 N. E. 641); *Saxlehner* v. *Siegel-Cooper Co.,* 179 U. S. 42 (45 L. Ed. 77, 21 Sup. Ct. Rep. 16).

It appears from the testimony that several persons wrote to the defendant upon matters pertaining to real estate dealings when they supposed they were addressing their communication to the plaintiffs, and that by the use of the name referred to the public was deceived, thereby substantiating the fact of unfair competition.

It follows from these considerations that the decree should be affirmed, and it is so ordered.

AFFIRMED.     REHEARING DENIED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McBRIDE concur.