Argued February 19, affirmed April 23, rehearing denied May 28, 1929.

## FEDERAL SECURITIES CO. *v*. FEDERAL SECURITIES CORPORATION.

(276 Pac. 1100.)

376

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with oral arguments by *Mr. W. W. Banks* and *Mr. E. B. Seabrook.*

For respondent there was a brief and oral arguments by *Mr. Thos. G. Green* and *Mr. John K. Kollock.*

ROSSMAN, J.—This is a suit to enjoin the defendant from the use of its corporate name, "Federal Securities Corporation," and also to prevent it from using the name which it assumed for engaging in business in Oregon, "Federal Securities Corporation of Illinois." Plaintiff was organized and incorporated in May, 1920, under the laws of this state; its articles of incorporation authorize it to engage in the business of buying and selling securities. Immediately following its incorporation the plaintiff began the transaction of business by purchasing and selling stocks and bonds and engaging in similar transactions in commercial paper consisting of the title reservation installment contracts executed by purchasers of automobiles; the latter, at that time, constituted a very substantial portion of its business. Until November of 1925 its customers were so limited in number and were so intimately identified with the plaintiff that it did not secure a permit as a dealer in securities under the provision of Section 6840, Or. L. In November of 1925 it organized itself for actively engaging in the sale of securities and in that month secured a dealer's permit. Its sales in the year pre-

ceding the institution of this suit amounted to the sum of $2,000,000, one-fourth of that amount represented its transactions in commercial paper, the balance consisted of the sale of bonds. It was possessed of approximately 300 customers and twice a month circularized about 400 individuals consisting of the 300 just mentioned, and about 100 prospective customers. Following its organization the plaintiff established desirable connections with corporations which originated large offerings of securities; these connections enabled it to become a member of syndicates which participated in the sales of such issues. Due to the fact that the plaintiff confined itself to conservative methods and the sale of securities of very high standing, it was acquiring a favorable reputation. By advising its customers of opportunities to sell their securities to good advantage and of other opportunities to convert their holdings into some more desirable form of investment it maintained a very intimate contact with them. The plaintiff depended on such means for the development of its business, rather than advertising and an indiscriminate search among possible prospects. Its reputation and business was entirely local and confined to a comparatively small number. Its name had not come to import any secondary meaning.

The defendant Federal Securities Corporation was incorporated under the laws of Illinois in the year 1919 and immediately began the transaction of business. Its articles of incorporation described the nature of the business which it was authorized to transact in words similar to those found in the plaintiff's charter; however, it pursued a very different course in achieving its purpose. It at once became an originator of bond issues and did not at-

tempt to gain a personal contact with buyers, but reached the latter by wholesaling its issues to retail dealers. In the year 1919 it originated issues to the amount of $3,500,000, the next year to the amount of $22,463,000; to and including the year 1927 issues originated by it amounted to more than $800,000,000. From the time that it opened its local office November 7, 1927, to some time in January, 1928, it sold bonds in this state in the amount of $1,300,000. Before it opened its local office it had sold bonds in this state by the process of correspondence. As we stated before, the defendant depended upon the wholesale method as the means of disposing of its bond issues; approximately 90 per cent of its business was of that type; on the other hand only 15 or 20 per cent of the plaintiff's business consisted of wholesaling. The latter originated no issues. In the period from 1919 to November 7, 1927, the defendant was authorized and actively pursued business in several other states. On the latter date it filed with the Corporation Commissioner of this state an application for a dealer's permit, pursuant to the provisions of Chapter 189. When the Commissioner observed that confusion might arise through the similarity of the defendant's name with that of the plaintiff, the defendant readily acquiesced in the suggestion that the words "of Illinois" be added to its name; it thereupon complied with Section 7777 to Section 7782, Or. L., regulating the transaction of business under assumed names, and then filed the appropriate application to do business in this state under the name of "Federal Securities Corporation of Illinois," thereupon the permit was granted. The defendant at once opened an office in the City of Portland, five blocks distant from that occupied by the plaintiff.

Its stationery and business cards bore not only the phrase "of Illinois," but in addition carried the information that its main office was in Chicago. The evidence justifies the finding that it has confined itself to its assumed name in the transaction of all of its business in this state. On one occasion there appeared in a Portland newspaper an advertisement concerning a large bond issue offered by a syndicate of dealers, of which the defendant was a member; its corporate name appeared in that advertisement. However, that advertisement was contracted from its Chicago office, and the incident occurred shortly after its entry into this state. Those circumstances may authorize the inference that the omission of the qualifying phrase was inadvertent.

The evidence indicates that after the defendant opened its office in Portland, some mail matter, telegrams and packages intended for the one were delivered to the other. Instances occurred where telephone calls were misdirected and upon two occasions the telegraph companies became confused in making charges for their services. We are satisfied, however, that much of this sort of confusion will disappear as the postal department, telegraph companies, and delivery men become acquainted with the two companies; such was the experience in *Umpqua B. Exch.* v. *Um-Qua V. B. Growers,* 117 Or. 678 (245 Pac. 324). The evidence is clear that the defendant has never taken advantage of the similarity of names, and has instructed its employees to make no misrepresentations concerning its identity; in fact, we seem to be warranted in concluding that the defendant is possessed of no desire to appear as the plaintiff. It has expressed itself as willing to continue the descriptive phrase "of Illinois" after its name, and to print

those words in letters of the same size as "Federal Securities Corporation." While the defendant is apparently ready to adopt any reasonable suggestions which will distinguish the two corporations and avoid confusion, the plaintiff confines itself to an insistence that the defendant should be denied the use of its name and that its assumed name is insufficient to prevent deception and confusion. The decree of the Circuit Court dismissed the complaint, but required that the words "of Illinois" should appear in type of the same size as "Federal Securities Corporation."

 The problem before us is a practical one, attended with important consequences to both parties. Fortunately the principles of law applicable to it do not restrain the court from applying any remedy which is likely to be beneficial and avoid confusion; the only obstacle which prevents an easy and complete avoidance of confusion, is the facts themselves. By its incorporation in Illinois the defendant was legally invested with its name: *Newby* v. *Oregon Central Ry. Co.*, Deady, 609 (Fed. Cas. No. 10,144); *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118 (49 L. Ed. 972, 25 Sup. Ct. Rep. 609); a name possessed by an active responsible and reputable organization becomes an asset of very great value in the course of time. It requires no argument to convince one that such a possession should not be injuriously affected, nor destroyed unless it is unjustifiably interfering with a like possession of some other person. The plaintiff, through its creation under the laws of this state, and the defendant by virtue of its compliance with the laws regulatory of corporations of its kind, have each won the right to do business within this state; the sole interference to a full exercise of those rights is the similarity of

corporate names. The problem now is, the degree of similarity which exists and which will be tolerated, the likelihood of deception, and to what extent the practical needs of commerce demand that distinguishing features should be created. It no longer requires the citation of authority to buttress the proposition that a second comer into the field cannot employ a name so similar to an already established concern that deception of the public and diversion of the first appropriator's business will be the result; a change of name, or the use of an explanatory phrase will be required. Where deception ensues motive and intent are immaterial; their presence, however, may quicken the application of a remedy by lessening the need of proof of injury: *Kansas Milling Co.* v. *Kansas Flour Mills Co.,* 89 Kan. 855 (133 Pac. 542). Counsel have called to our attention numerous authorities. A careful reading of them justifies the statement that in each instance the court was endeavoring to apply the principle of law so well stated by Mr. Justice HOLMES in the following language: ''Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff, merely on the strength of having been first in the field, may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the plaintiff's custom'': *American Waltham Watch Co.* v. *United States Watch Co.,* 173 Mass. 85 (53 N. E. 141, 73 Am. St. Rep. 263, 43 L. R. A. 826). It is, of course, well established that one corporation cannot restrain another from using in its corporate title a name or a word to which all others have a common

right: *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict, supra.*

Our reports contain several decisions which illustrate the application of the foregoing principles and particularize their meaning to various sets of facts. In *Duniway Publishing Co.* v. *Northwest Printing & Publishing Co.,* 11 Or. 322 (8 Pac. 283) the plaintiff, which had published for many years a weekly newspaper entitled ''The New Northwest,'' sought to restrain the defendant from the publication of a daily and weekly newspaper entitled ''The Northwest News.'' Relief was denied, the court saying, ''It is clear that the titles are sufficiently distinct to prevent the court declaring an infringement by mere inspection of the titles''; a review of the evidence failed to satisfy the court that the charges of an infringement were borne out by it. In *Columbia Engineering Works* v. *Mallory,* 75 Or. 542 (147 Pac. 542), it was contended that the trademark employed by the defendant infringed upon the one owned by the plaintiff. This court in determining the scope and extent of the rule governing unfair competition, quoted from a text to the effect that in order to make out a case of unfair competition it is not necessary to show that any person has been actually deceived by the similarity, but it is sufficient when it appears that deception will be the natural and probable result of the defendant's acts. ''In close cases, where the deceptive tendency is not clear, equity will withhold its hand until actual deception has resulted. Mere possibility of deception is not enough.'' In *Wood* v. *Wood,* 78 Or. 181 (151 Pac. 969, Ann. Cas. 1918A, 226, L. R. A. 1916C, 251), the plaintiffs were established in business under the assumed name of ''Wood Realty Co.''; later the defendant, an individual, entered the field under

the name of "W. E. Wood Realty Co."; the plaintiffs remonstrated with him and sought to induce him to avoid the use of the deceptive name. The proof showed that business intended for the plaintiff had been diverted to the defendant by reason of the similarity of names. Relief was allowed; the decision makes it quite clear that a circumstance which persuaded the court was the defendant's actual employment of intentional deception. In *Danton* v. *Mohler Barber School*, 88 Or. 164 (170 Pac. 288), the facts were that the plaintiffs were the licensees of the assumed name of Moler Barber College, a name which was well established and favorably known throughout the nation. After they had been in business for some years the defendant secured articles of incorporation for itself under the name of Mohler Barber School and located its place of business within one-half block of the plaintiff's establishment. The plaintiff charged intentional fraud. The defendant was enjoined from the use of its name. It will be observed that Moler and Mohler are *idem sonans* and that school and college have practically the same meaning. In *Umpqua B. Exch.* v. *Um-Qua V. B. Growers*, 117 Or. 678 (245 Pac. 324), the facts were that the plaintiff was established in business as a corporation under its name of Umpqua Broccoli Exchange and sought to enjoin the defendant, another corporation, which later entered the field under the name of "Um-Qua Valley Broccoli Growers" from the use of its corporate name. Both concerns were engaged in the same kind of business; that is, distributing to distant markets the broccoli grown in the Umpqua Valley. There was no evidence of intentional deception; there was evidence, however, of con-

fusion. The plaintiff had chosen its name on account of its geographical significance, while the defendant selected its name on account of its succession to a prior concern entitled the "Umpqua Valley Fruit Union" which some years previously had merchandised broccoli. Relief was denied on account of the fact that there was sufficient dissimilarity between the names. We quote the following from the decision:

"A corporate charter grants no immunity in the use of a deceptive name. The same rule applies to corporate names as applies to the name of natural persons. The name may be used, but only if used honestly. A name selected and adopted for the purpose of deception and calculated to produce it will be enjoined. Corporate names will be protected from imitation constituting unfair competition. Injunction will be refused where no probability of deception by reason of the name is shown. Priority in adoption and user usually confers the superior right. In cases of alleged conflict of corporate names a court of equity is guided by the same principles that are applied in the protection of individuals in the use of trademarks and trade names. The question for consideration is whether the public purchasing the commodity or service in question will probably be deceived to the injury of plaintiff."

Two more cases from this district may be read with interest; one determined by this court, the other by the federal Circuit Court for this district: *Union Fishermen's Co.* v. *Point Adams,* 108 Or. 535 (217 Pac. 642); *Newby* v. *Oregon Cent. Ry. Co.,* Deady, 609 (Fed. Cas. No. 10,144).

Counsel for the two parties have called to our attention a large number of cases from the various other jurisdictions; they add but little now to the statement of the principles which we have previously

reviewed, but due to the fact that several of them involve sets of circumstances somewhat similar to those now before us a brief review of the facts of those cases may be helpful in determining what result should be reached in the problem before us. In *Central Trust Co.* v. *Central Trust Co. of Illinois,* 149 Fed. 789, both corporations were engaged in the same kind of business in the City of Chicago; the plaintiff was a Nebraska corporation which began business before the defendant corporation, but its previous entry into the field was illegal due to its failure to comply with the corporation laws of Illinois. It now sought to enjoin the postoffice authorities from delivering to the defendant "The Central Trust Company of Illinois" mail matter addressed to "The Central Trust Company"; the suit was dismissed. The court made frequent mention of the plaintiff's illegal entry into the field, perhaps, for reasons akin to those developed and applied in *Mutual Export & Import Corporation* v. *Mutual Export & Import Corporation of America* (D. C.), 241 Fed. 137, which we shall presently review. The following *obiter dictum* is found in the decision: "It is evident that while there is a slight difference in the names of the two corporations, it is so slight that for all practical purposes that would be considered practically identical, and in a proper case made for unfair competition the court would have to so direct." It is to be observed, that both establishments were located in Illinois. In *Eastern Outfitting Co.* v. *Manheim,* 59 Wash. 428 (110 Pac. 23, 35 L. R. A. (N. S.) 251), the plaintiff's corporate name was "Eastern Outfitting Company, Seattle, Washington"; it had been engaged in business for several years in Seattle. In the meantime defendant had established himself in business

in Spokane, under the name of Eastern Outfitting Company. The plaintiff now proposed to establish a branch store in the latter city, and sought to restrain the defendant from the use of his assumed name. Both concerns dealt in "cloaks and suits, also gent's clothing." The plaintiff called attention to the fact that Seattle, Washington, was a part of its corporate name. In denying relief to plaintiff the court felt that those geographical words were immaterial so far as the solution of the problem was concerned. In *Grand Lodge* v. *Grand Lodge,* 174 Ala. 395 (56 South. 963), the Grand Lodge Knights of Pythias was granted an injunction restraining defendants from the use of the name "Grand Lodge Knights of Pythias of North and South America." It will be observed that the geographical words embraced the same territory in which the plaintiff operated. In *B. P. O. E. of the United States of America* v. *Improved B. P. O. E.,* 122 Tenn. 141 (118 S. W. 389), the court held that defendant's name "Improved Benevolent Protective Order of Elks" was an infringement upon the plaintiff's well-established title "Benevolent Protective Order of Elks." In *Mutual Export & Import Corporation* v. *Mutual Export & Import Corporation of America,* 241 Fed. 137, the facts were that the defendant was incorporated February 10, 1916, under the laws of Delaware, with the object of transacting in New York the character of business implied by its name. The plaintiff, for similar purposes, was incorporated in New York one month after the defendant's incorporation. Each was ignorant of the other, and each immediately following its chartering, opened offices in New York. But the defendant had failed to comply with the foreign corporation laws of New York.

The similarity of names soon caused confusion. Relief was allowed the plaintiff. The court commented upon the fact that had the defendant filed its name in New York, as required by the foreign corporation laws, the plaintiff would not have selected the same time and thus there would have been no conflict. In *Glucose Sugar Refining Co.* v. *American Glucose Sugar Refining Co.* (N. J. Ch.), 56 Atl. 861, the plaintiff was incorporated under the laws of New Jersey August 2, 1897. The defendant was organized under the same laws September 15, 1897. The plaintiff at once sought relief, which was granted, the court saying: "The names are so nearly similar as to lead to uncertainty and confusion." In *American Clay Mfg. Co.* v. *American Clay Mfg. Co. of New Jersey,* 198 Pa. 189 (47 Atl. 936), the plaintiff, a Pennsylvania corporation was established in business in Pittsburgh in the manufacture and sale of bricks; defendant was engaged in a similar business in New Jersey and now invaded the Pittsburgh district. Both concerns employed the same kind of letter-heads, envelopes, etc., but later defendant printed in red ink after its name "of New Jersey." There was evidence of confusion; relief was granted the plaintiff; the court made no mention of the geographical phrase. In *Herring Hall-Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554 (52 L. Ed. 616, 28 Sup. Ct. Rep. 350), plaintiff was the successor by purchase of the business and goodwill of Hall's Safe & Lock Co., an old established business of good repute. The defendants are the sons of the founders of that business and organized an Ohio corporation which manufactured safes and proposed to mark its product "Hall's Safes." The plaintiffs sought relief against the use by defendants of that trade name. The decision held

that defendants could not be enjoined from the use of their name, but that they must accompany it with such explanatory matter that deception will be avoided. In *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169 (41 L. Ed. 118, 16 Sup. Ct. Rep. 1002), the defendants were constructing their product in such manner that it resembled that of the plaintiff, and branded it with the words ''Improved Singer,'' it was held they thereby induced the false belief that their machines were the product of the plaintiff. The court found that deception was intended; the relief did not prohibit the use of the word ''Singer,'' which was generic, but required that its use should be accompanied with satisfactory explanatory matter which would prevent deception. In *Waterman Co.* v. *Modern Pen Co.*, 235 U. S. 88 (59 L. Ed. 142, 35 Sup. Ct. Rep. 91), the plaintiff was an old-established manufacturer of fountain pens; the defendant brought into its organization one by the name of Arthur A. Waterman, and thereupon marked its product with the name of A. A. Waterman & Company, in such a manner that its pens appeared to be the product of the plaintiff. The court again enunciated the well-established rule that a later competitor will not be permitted to deceive the public into the belief that his goods are the product of the established concern, and thereby profit from the confusion, but that he will be required to employ precautions to prevent deception. Relief was allowed, but defendant was not prevented from the use of its corporate name. In *Dodge Stationery Co.* v. *Dodge,* 145 Cal. 380 (78 Pac. 879), the facts were that there was located in San Francisco an established business under the name of Dodge Stationery Co., plaintiff in this suit. J. S. Dodge, a defendant, was one of the founders of that business. Upon

his withdrawal from the plaintiff corporation he proceeded to open a new establishment within one hundred feet of the plaintiff, under the name of "Dodges" which was the popular name of the plaintiff. The decision enjoined him from the use of the name "Dodge" unless accompanied with explanatory matter stating that the new business established by himself was not the old business with which the public had become familiar; he was not enjoined from the use of the name "Dodge." *Terry* v. *Cooper,* 171 Ark. 722 (286 S. W. 806, 48 A. L. R. 1254), is not sufficiently in point to warrant a review. In *Charles S. Higgins & Co.* v. *Higgins Soap Co.,* 144 N. Y. 462 (39 N. E. 490, 43 Am. St. Rep. 769, 27 L. R. A. 42), the plaintiffs were the successors to an old-established soap manufacturing company which had become known popularly as the Higgins Soap Company, and its product as "Higgins Soap." One of the defendants was the son of the founder of the business and he at one time was the president of the plaintiff. He now sought to organize a new corporation under the name of Higgins Soap Company and establish a business in the same locality where the plaintiffs' was located. The defendant stamped its product not only with the name of itself, but also with the name of Charles S. Higgins. The decision enjoined it from so doing. In *Diamond Drill Contracting Co.* v. *International Diamond Drill Contracting Co.,* 106 Wash. 72 (179 Pac. 120), it appeared that drilling with a diamond drill was an established method known to miners and contractors. The plaintiff had been engaged in such business since 1900; defendant entered the same field in 1913. The court refused to enjoin the defendant from the use of its corporate name, although some confusion was shown to have de-

veloped; it pointed out that both companies appealed to a limited clientele which was interested, not so much in names, but in identities. In *United Drug Co.* v. *Rectanus Co.,* 248 U. S. 90 (63 L. Ed. 141, 39 Sup. Ct. Rep. 48), the facts were that the plaintiff and its predecessors had established in the New England States, the trade name of ''Rex'' upon a remedy; the defendant had for many years manufactured and marketed, in Louisville, Kentucky, a ''blood purifier'' under the trade name of ''Rex.'' In the latter district the plaintiff's remedy was practically unknown; similarly the defendant's was unknown in the New England states. The plaintiff had properly registered its name. The plaintiff now undertook to invade the defendant's market, and sought relief against the use by the latter of the trademark ''Rex'' upon his product. Relief was denied, because trademarks do not operate in gross, and have no negative or prohibitive effect where there is nonuser, but are effective only so far as put to use; hence the plaintiff's rights were established only in the New England states, where its trademark had been actively employed. In *Terminal Barber Shops* v. *Zoberg,* 28 Fed. (2d) 807, the plaintiffs were operating thirty-one shops entitled, as the case might be, ''Terminal Beauty Parlors,'' or ''Terminal Barber Shops''; it had perfected unique devices, and had expended large sums in advertising; both combined created for its trade names a goodwill and favorable reputation. Thereupon the defendants entered the field and sought to assume the name ''Terminal Beauty Parlors.'' Deception and confusion were established by proof. Relief was allowed. In *Sweet Sixteen Co.* v. *Sweet ''16'' Shop, Inc.,* 15 Fed. (2d) 920, the plaintiff operated five stores under its

corporate name in four of the Pacific Coast cities, but none in Salt Lake City, although its mail order trade reached that city and it contemplated the operation of a store there. The defendant, who had actual knowledge of plaintiff's existence, chose the above deceptive name and thereby misled some of his trade. Relief was allowed. In *Buckspan* v. *Hudson's Bay Co.*, 22 Fed. (2d) 721, the facts were that the plaintiff was possessed of an extensive business in the sale of raw furs by auctions conducted in London; it was not engaged in the sale of furs, either wholesale or retail in the United States, but its furs in various forms, together with tobacco, blankets and other products were for sale by its vendees in all parts of the country, including Dallas. In the latter city the defendant, without authority, assumed the name of "Hudson Bay Fur Company of Texas Independent"; this name actually deceived some of his trade into the belief that they were dealing with a branch of the plaintiff. Relief was allowed. It is deserving of notice that for three years plaintiff had unsuccessfully attempted to induce the defendant to add an explanatory phrase to his name. In *Rice & Hutchins* v. *Vera Shoe Co.*, 290 Fed. 124, the defendant fraudulently appropriated the trade name of the plaintiff's products; efforts to dissuade it from so doing were unavailing; relief was allowed. In *W. & H. Walker, Inc.*, v. *Walker Bros. Co.*, 271 Fed. 395, the plaintiffs had for many years been established in business in Boston; the defendants were equally well established in Pennsylvania; both were engaged in the same general line of business; each was ignorant of the existence of the other, until the defendant, by expanding from retail into wholesale business, invaded the plaintiff's trade area. The latter there-

upon sought a decree enjoining defendants from entering Boston. The court held that although there was a similarity of names, other circumstances identified with the products sufficiently distinguished the one from the other; relief was, therefore, denied. In *Borden Ice Cream Co.* v. *Borden's Condensed Milk Co.*, 201 Fed. 510 (121 C. C. A. 200), the plaintiff was the well-known producer of condensed milk and similar products. The defendant was a corporation in which one share of stock was held by an individual by the name of Borden, who had not paid for it and who had never been engaged in a similar enterprise. But the plaintiff was not a manufacturer of ice-cream. This circumstance persuaded the court that there was no likelihood that its goodwill would be injuriously affected by the second appropriator's activities, nor of any harm to the public. Here, apparently, there was a fraudulent intent, but no probability of deception. In *Kansas Milling Co.* v. *Kansas Flour Mills Co.*, 89 Kan. 855 (133 Pac. 542), the defendant was incorporated six years after the plaintiff. The latter operated a mill in Wichita; the defendant operated mills in seven different cities, but none in Wichita; in the latter city it maintained its general offices. The plaintiff was denied relief on the premise that the names were not sufficiently similar to produce deception; the decision mentioned expressly the fact that both names were geographical and that both were truthful. In *Farmers' Loan & Trust Co.* v. *Farmers' Loan & Trust Co. of Kansas*, 21 Abb. N. C. 104 (1 N. Y. Supp. 44), the plaintiff had been established in business in New York City as a trust company for more than fifty years when the defendant opened an office near by; the latter's business consisted largely of the sale of securities

originated by itself. No fraudulent purpose was averred. The court was of the opinion that the descriptive phrase "of Kansas" sufficiently distinguished the two names. In *Snowden* v. *Noah,* 1 Hopk. Ch. (N. Y.) 347 (14 Am. Dec. 547), a pioneer case mentioned in *Duniway Pub. Co.* v. *Northwest Printing Co., supra,* it was held that the title "The New York National Advocate" was not an infringement upon the "National Advocate." In *International Trust Co.* v. *International Loan & Trust Co.,* 153 Mass. 271 (26 N. E. 693, 10 L. R. A. 758), it was held that since the defendant always added after its name the words "of Kansas City, Mo." a sufficient distinction was created between the two companies. Both were engaged in the same general line of business, the plaintiff being the first to enter the field.

■ The foregoing constitutes a review of all the principal cases cited by counsel, together with a few others which came to our attention; their number could be readily multiplied. We believe that they justify the conclusion that primarily it is not the name which is protected, but the business; the latter is guarded against injury through a fraudulent traffic in its name by later comers. The business will be protected whether conducted in the name of an individual or that of a corporation; whether the name is fanciful or not. But, to justify relief the circumstances must be such that it appears that the business will suffer from a deceptive use of its name, or that by reason of a similar act of unfair competition, the public will be imposed upon.

From Nims on Unfair Competition, etc. (2 ed.), Section 98 we quote:

"What names are 'calculated to deceive' and what names are so 'different,' or 'dissimilar,' as not to tend to cause confusion or deceit? What standard can be applied to measure names, to discover whether or not they are conflicting? The house of Lords has said that no witness is entitled to express an opinion as to this. The names may be put in evidence, together with the facts as to their use, and the circumstances surrounding the choosing of them; but there is no standard, except what the court in each particular case believes has worked fraud, or may work fraud or loss to the plaintiff. The probability of injury resulting from the use of the two names is the test to be applied by the court for the purpose of deciding whether or not the name will conflict. The 'Merchant Banking Company' was established in 1863. In 1878 the 'Merchants' Joint Stock Bank' was started. No one had been misled. The two banks were at a distance from each other, although both in London, and the Chancery Court refused an injunction, being 'satisfied that there is not likely to be any damage or injury to the plaintiffs at all, from the act of the defendants.' In most cases, however, such similar names would cause confusion. The mere fact that two concerns happen to be widely separated geographically is no proof that no confusion can or will result from the use of the same name by both. In *Ball* v. *Best,* Best & Co. in Chicago was held to be in unfair competition with Best & Co. of New York; and, again, two concerns may be but a short distance apart and yet be fairly competing, as for instance: the 'Fulton National Bank of New York' and the 'Fulton National Bank of Brooklyn.' Again, names of corporations may be similar or exactly the same and the companies be located very near each other without creating any unfair competition if the names are distinct and businesses dissimilar."

The ultimate question is always whether trade is being unfairly diverted, and whether the public is

being cheated into the purchase of something which it is not in fact getting: the courts interfere solely to prevent deception. The law recognizes a right of property in a name, and generally permits each to conduct his business in his own name; these rights are subject to the limitation that they shall not be so dishonestly exercised that the public will be misled as to the identity of a business or the source of a piece of merchandise. The sole distinction between a corporate and an individual name, in the application of these principles, is that a second incorporator comes to the name not unconsciously, but by choice, and that he need not select the name of an already well-established business. Should he do so he thereby will supply evidence that he intends to palm off his goods as those of the first appropriator. And as is suggested in *Newby* v. *Oregon Cent. Ry. Co., supra,* "although not technically a trade-mark, the authorities are in favor of holding that a corporate name deserves the same consideration as a trade-mark." The injury guarded against is twofold: (1) injury to the public by having palmed off upon it a spurious article believing it to be the product of the old-established firm in which it reposes confidence, (2) injury to the defrauded corporation by having its trade diverted to the newcomer. The case of *Buckspan* v. *Hudson's Bay Co., supra,* is an illustration of where the public was the principal beneficiary of the decision. A greater degree of similarity in names will be tolerated where they are geographical or descriptive than where the first corporation's name is fanciful and arbitrary; the cases of *Kansas Milling Co.* v. *Kansas Flour Mills Co.* and *Sweet Sixteen* v. *Sweet "16" Shop, supra,* are good illustrations of the application of that principle. As we observed before

the thing protected is the business; good illustrations are the cases of *United Drug Co.* v. *Rectanus Co., supra,* and *Borden's Ice Cream Co.* v. *Borden's Cond. Milk Co.* While there is no necessity to prove fraud, yet when fraud appears it seems patience ceases to be a virtue and the relief may become broader: good illustrations are *Wood* v. *Wood, supra,* and *Danton* v. *Mohler Barber School, supra.*

■■ When it has been found that there is a similarity of names, a court does not cease its inquiries and at once grant relief, but proceeds to ascertain whether the other facts are such that deception and injury are likely. The cases of *W. & H. Walker, Inc.,* v. *Walker Bros. Co.* and *Borden's Ice Cream Co.* v. *Borden's Condensed Milk Co.* justify this statement; but we shall proceed to particularize: it is evident from the foregoing review of cases that where a business offers its services only to a small highly specialized group, capable of close discrimination, as in *Diamond Drill Contracting Co.* v. *International Diamond Drill Contracting Co., supra,* a greater degree of similarity will be tolerated, than where the business offers itself generally to all comers, most of whom will respond to similarity and not investigate identity; this is especially true where the articles are commonplace and are purchased without a careful scrutiny of the identity of the vendor, like clothing, soap, bricks, or a barber's services: good illustrative cases are: *Eastern Outfitting Co.* v. *Nanheim, supra, Charles S. Higgins Co.* v. *Higgins Soap Co., supra, American Clay Mfg. Co.* v. *American Clay Mfg. Co. of New Jersey, supra,* and *Terminal Barber Shops* v. *Zoberg, supra.* See especially Hopkins on Trademarks, etc., § 123. The difficulty of acquiring precise information as to identity is increased when the ar-

ticle is of modest value and is passed from manufacturer to consumer through the medium of independent retailers, like in the Waterman case. Such circumstances increase the possibility of deception. But where the article is of great value, and the buyer is more interested in the personnel than in the name of the institution, and is brought in direct contact with the former, as in *Farmers' Loan & Trust Co.* v. *Farmers' Loan & Trust Co. of Kansas,* the danger that lurks in similarity of names is diminished.

When prompt action is taken before the second comer has established itself, a greater distinction may reasonably be demanded, as in the case of the *Glucose Sugar Refining Co.* v. *American Glucose Refining Company.* The addition of a geographical phrase which includes both corporations may fail to make a sufficient distinction: the above case is an example as well as that of the case concerning the Knights of Pythias Lodge where the second appropriator added "of North and South America" to a well-established fraternal society name; that phrase included the same territory in which the plaintiff operated and obviously would create no discrimination in the public mind. Likewise the addition of the phrase "of Illinois," in the Central Trust Co. case failed to distinguish the one from the other because both were located in Chicago. Likewise the second comer became first in the field through an illegal entry.

■ Applying these conclusions to the case before us we find that both corporations are transacting business with customers who are alert, and capable of discrimination. This statement is substantiated by the fact that the plaintiff's customers are largely people of wealth, while the defendant's business is done principally with financial institutions. Such buyers

do not give a hasty glance at the door and then repose confidence in whomsoever they find inside; but, customers of such institutions are interested in the officials as well as in the entity. Transactions negotiated by buyers of high-class securities are not upon a basis of the taking of bids, like in the buying of bricks, but they are generally preceded by a personal solicitation by a salesman, followed by an investigation of not only the bond but also of the dealer. We believe that while confusion may continue for a while and perhaps, never entirely cease, no probability of deception appears. We are entirely satisfied that no intended piracy of a name is involved in this suit. But moreover, the plaintiff cannot in justice, demand that the defendant should be denied the right to the use of its assumed name. The plaintiff's name is not fanciful, but the words composing it lie in the public domain. Both corporations were establishing themselves in this state at approximately the same time through the sale of securities; the plaintiff personally, the defendant through the medium of correspondence. Undoubtedly the goodwill and repute which accrued to the plaintiff was far greater in value than that which came to the defendant, but, nevertheless, as a result of those activities the defendant came to this state November 7, 1927, not as a stranger, but as one whose name was known and who was possessed of an established trade here.

■ Both names are truthful; neither is arbitrary nor fanciful. Where the words selected for a corporate name are chosen from the public domain and imply a national business, and where the territory in which it operates is one that will probably be reached through the natural expansion of an established institution, which is in fact national in scope,

the former cannot demand a complete exclusion when the latter bids entry, but must be content with such explanatory matter as will prevent deception, although it may not entirely eliminate confusion by the careless.

The decree of the Circuit Court ordered the defendant to continue the practice of using the phrase ''of Illinois'' in connection with its name, and directed that it should be printed in type as large, at least, as the defendant's name, and in an equally conspicuous place. The relief thus granted meets with our approval.

The decree should not have recited that the complaint was dismissed, but this is not a matter of grave consequence; the appropriate relief was allowed and it is clear what was intended. Affirmed. Costs to neither party.

AFFIRMED. REHEARING DENIED.

COSHOW, C. J., and McBRIDE and RAND, JJ., concur.