616

# KATHLEEN SPIKES ROBINSON et al. v. ELIJAH FRANKLIN SPIKES et al.—385 S.W.(2d) 298.

Eastern Section. August 5, 1964.

Certiorari Denied by Supreme Court November 12, 1964.

Rom Meares, Maryville, for appellants.

Goddard & Gamble, Maryville, for appellees.

PARROTT, J. Kathleen Spikes Robinson filed this suit seeking to enjoin Elijah Franklin Spikes from using

the name "Spikes" in connection with the operation of a restaurant and also requiring him to remove a sign bearing the name "Spikes" which was located in front of his restaurant, and for damages.

The complainant and defendant were formerly husband and wife, being divorced during the year 1958. Up until the divorce, they operated a restaurant on the Alcoa-Knoxville Highway, approximately six miles north of Maryville which was known as Spikes Restaurant. Mr. Spikes has been engaged in the restaurant business in or around Maryville for the past thirty-four years.

At the time this suit was filed, Mr. Spikes was the operator of the Simple Simon Restaurant which was located on the south side of Maryville, approximately ten miles from the Spikes Restaurant which is operated by the complainant. A short time after commencing operations, Mr. Spikes caused to be erected a large sign over the existing Simple Simon sign with the word "Spikes" in large letters.

In complainant's original bill which was filed on May 29, 1959, she alleges that as a result of the construction of this sign there was a great deal of confusion and misunderstanding as to the mail, parties, banquets and patrons of her restaurant, etc.

She further alleges that the property settlement entered into at the time of the divorce conveyed all rights, title and interest to Spikes Restaurant along with the good will and her exclusive right to use the name Spikes Restaurant. The pertinent provisions of the property agreement pertaining to this suit are as follows:

"(1) That the party of the second part agrees to transfer, sell and convey all of his interest of whatso-

ever kind or nature in and to the restaurant business known as Spikes Restaurant, including all of the stock in trade, the equipment, fixtures, furniture, accounts receivable, the good will and the right to use the name of the business as Spikes Restaurant, to the party of the first part.''

''(9) The party of the second part agrees and covenants that he will not engage in the restaurant business within a ten mile radius of the Spikes Restaurant for a period of one (1) year from date.''

On July 8, 1959, the chancellor refused to issue an interlocutory mandatory injunction on this original bill.

The case was finally heard on depositions on May 23, 1963. The court rendered its opinion on September 10, 1963, refusing to grant an injunction and dismissed the complainant's bill on the basis that the above stated property agreement did not ''convey to the complainant the exclusive right to use the name Spikes, but rather, it was the intention that the complainant, Kathleen Spikes Robinson, be given permission to use the said name.''

From this decree the complainant has appealed and her assignments of error present to this court the question of whether or not the complainant has acquired a property interest in the use of the name Spikes. The complainant insists, as a result of the property agreement, she obtained all of the good will and the exclusive right to use the name Spikes in connection with the restaurant business.

We cannot agree with the complainant's position but must concur with the chancellor. We are of the opinion the proper interpretation and construction to be

placed upon Paragraph I of the property agreement would be that Mr. Spikes conveyed all of his right, title and interest in the Spikes Restaurant which was located on the north side of Maryville, but did not convey the exclusive use of the name Spikes. It is apparent from this proof that the defendant planned to re-enter the restaurant business. Paragraph IX of the property agreement precludes him from engaging in the restaurant business for a period of one year within a ten mile radius of complainant's restaurant, but with no further limitations. If it had been the intention of the defendant to never re-enter the restaurant business or to never again use his name in connection with the restaurant business, we believe it would have been specifically spelled out in the agreement.

■■ The general rule as to the use of one's name by contract is stated in 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition sec. 107d, page 366:

"The right to use a personal name may be lost by estoppel, or it may be lost, conveyed, or regulated by contract, but a contract depriving one of the right to use his own name must be clear and unequivocal in order to be given that effect."

On page 361 it is stated:

"Personal names must be used truthfully and in good faith, or their use will be enjoined. A man must use his own name honestly and not as a means of pirating on the good will and reputation of a rival by passing off his goods or business as the goods or business of his rival who gave the name its reputation and value."

Therefore, we must hold that the property agreement was no more than a conveyance of the property known as Spikes Restaurant located on the north side of Maryville.

It is a well established rule in Tennessee that the courts will issue an injunction against the use by another of a name so similar in general appearance so as to deceive the public and result in substantial loss or injury. Robinson v. Storm, 103 Tenn. 40, 52 S.W. 880.

In the famous case of Newcomer Company v. Newcomer's New Store, 142 Tenn. 108, 217 S.W. 822, it was held that it was not necessary that the public actually be deceived by the similarity but the liability will be based on the deception and consequent injury. We cannot say that this case falls in the above rules or comes within those cases where a newcomer is enjoined because of unfair competition. We do not believe the erection of this sign is such deception as should be enjoined. We find no evidence of fraud or intention on the part of the defendant to cause harm. Although the restaurants undoubtedly cater to some of the same patrons or clientele, the locations are so far apart that we cannot see how the complainant's business would be damaged.

This is not a similar situation to the Kay Jewelry Co. of Chattanooga v. Morris, et al., 26 Tenn.App. 285, 171 S.W.(2d) 410, in which this court enjoined the newcomer from operating a jewelry store under the name of Ray Jewelry Company within a block and a half of the Kay Jewelry Company which had been established for some time. The location of these restaurants is such that the only method of travel to them would be by automobile. They do not enjoy what is commonly referred to as the "walk-in" trade. As heretofore stated, they are located on the opposite sides of the town of Maryville and any person desiring to patronize either of these restaurants would have to have a definite destination in mind prior to departure.

They both enjoy a certain amount of tourist trade and there is testimony that Spikes Restaurant has billboard signs located along the highway, as well as other advertising. We do not believe tourist or other people unfamiliar with these restaurants would be greatly confused or misled.

■ The primary test when a court will enjoin another for the use of a similar name because of unfair competition is whether the trade is being unfairly diverted and whether the public is being cheated into the purchase of something which it is not in fact getting or that the public will be misled as to the identity of a business or product. Federal Securities Co. v. Federal Securities Corp., 129 Or. 375, 276 P. 1100, 66 A.L.R. 934.

In this case we cannot say that Mr. Spikes has intentionally attempted to mislead the public. He has been in the restaurant business some thirty-four years and it appears that he has enjoyed a successful career. He is further, by his long association with the restaurant business, well known in the vicinity of Maryville. It is true there has been some confusion and that some orders of foodstuffs have been delivered to the wrong location and also that some dining parties have come to the wrong establishment, but this confusion is not so great as to warrant a court to issue an injunction.

■ The last assignment of error complains of the chancellor's excluding the testimony of Mrs. Robinson. This testimony was statements of third persons attempting to show the confusion that existed as to the similarity of the two names. Appellant complains that it would have been impractical to require the presentation of the numerous witnesses to prove that they were confused

or misled. The chancellor was correct in excluding this testimony. It was pure hearsay.

All assignments of error are overruled and the decree of the chancellor is affirmed. Let the costs be taxed to the appellant.

McAmis, P. J., and Cooper, J., concur.