Argued March 24, affirmed April 20, 1926.

# UMPQUA BROCCOLI EXCHANGE v. UM–QUA VALLEY BROCCOLI GROWERS.

(245 Pac. 324.)

**Trademarks and Trade Names and Unfair Competition.**

1. Corporate charter grants no immunity in use of a deceptive name, which rule applies to corporate names, as well as names of natural persons.

**Trademarks and Trade Names and Unfair Competition.**

2. A name selected and adopted for purpose of deception and calculated to produce it will be enjoined.

**Trademarks and Trade Names and Unfair Competition.**

3. Corporate names will be protected from imitation constituting unfair competition, but injunction will be refused where no probability of deception by reason of name is shown.

**Trademarks and Trade Names and Unfair Competition.**

4. Priority in adoption and user of names usually confers the superior right.

**Trademarks and Trade Names and Unfair Competition—Court of Equity in Cases of Alleged Conflict of Corporate Names is Guided by Same Principles That are Applicable in Protection of Individuals in Use of Trademarks and Trade Names.**

5. In cases of alleged conflict of corporate names, court of equity is guided by same principles as are applicable to protection of individuals in use of trademarks and trade names; question for consideration being whether public purchasing commodity or service will probably be deceived to injury of plaintiff.

**Trademarks and Trade Names and Unfair Competition—In Cases of Alleged Conflict of Corporate Names, It is Sufficient to Show That Deception will be Natural and Probable Result of Defendant's Acts, but Mere Possibility of Deception is not Enough.**

6. In cases of alleged conflict of corporate names, it is unnecessary to show by specific instances that purchasers have actually been deceived by defendant's conduct and led to purchase his goods in belief that they are goods of plaintiff, or to deal with defendant thinking they were dealing with plaintiff, it being sufficient to show that such deception will be natural and probable results of defendant's acts, but mere possibility of deception is not enough.

1. See 7 R. C. L. 132.
2. See 26 R. C. L. 898.
3. See 26 R. C. L. 887.

Corporations—Persons, Desiring to Incorporate Under Name Previously Used as Name of Unincorporated Organization, are not Barred from so Doing Because Others had Incorporated Under That Name Subsequent to Time They Began to Use It.

7.   Persons, desiring to incorporate under a name they have previously used as name of organization not incorporated, are not barred from so doing because others had incorporated under that name subsequent to time they began to use it as name of an unincorporated organization.

Trademarks and Trade Names and Unfair Competition—Similar Trade Name Adopted by Defendant must be Reasonably Calculated to Deceive Public and Result in Injury to Plaintiff in Order to Entitle Plaintiff to Injunction Restraining Use Thereof.

8.   To entitle complaining corporation to an injunction restraining use of similar trade name by defendant when not the same as that of plaintiff, name must be so similar thereto that, under all circumstances of locality, business, etc., its use is itself reasonably calculated to deceive the public and result in injury to plaintiff, or else it must be used fraudulently in such a way as to have that effect.

Trademarks and Trade Names and Unfair Competition—Corporation cannot Ordinarily Acquire Right to Exclusive Use of Geographical Words in Its Name, or Words Merely Generic or Descriptive of Particular Business, so as to Enjoin Their Use by Another Corporation in Its Name, in Absence of Fraud or Intent to Deceive.

9.   Unless words in similar trade name adopted by defendant have acquired in mind of public a secondary meaning as denoting goods or business of a particular company, a corporation cannot acquire right to exclusive use of geographical words in its corporate name, or words merely generic or descriptive of a particular business, class of goods, etc., which anyone may lawfully use, so as to be entitled to enjoin their use by another corporation in its name, in absence of actual fraud or intent to deceive.

Trademarks and Trade Names and Unfair Competition — "Um-Qua Valley Broccoli Growers" Held not so Similar to "Umpqua Broccoli Exchange" as to Entitle Plaintiff to Restrain Use Thereof, in Absence of Fraud or Intent to Deceive, and Lack of Probability That Anyone Would be Deceived or Misled Thereby to Injury of Plaintiff.

10.   Use by defendant corporation, engaged in marketing broccoli, as its corporate name, of the words "Um-Qua Valley Broccoli Growers," *held* not so similar to "Umpqua Broccoli Exchange," adopted by plaintiff corporation engaged in similar business, in absence of fraud or intent to deceive, so as to entitle plaintiff to restrain use thereof, where there was no probability of anyone being deceived or misled thereby to injury of plaintiff, and plaintiff not acquiring exclusive right to use of word "Umpqua" or "Um-Qua," which is geographical, or "Broccoli" which is generic.

Evidence—Presumption is That Corporation Commissioner Examined
    Articles of Incorporation of Defendant and Found No Objection
    Thereto (§ 6861, Or. L.).
11.  Corporation commissioner being successor of Secretary of
State in passing on selection of a name of a corporation, under
Section 6861, Or. L., presumption is that he examined articles of
incorporation of defendant and found no objection thereto.

Corporations, 14 **C. J.**, p. 313, n. 25, p. 314, n. 31, p. 327, n. 81,
p. 328, n. 87, p. 329, n. 88, 92, p. 330, n. 93, 94.
    Trademarks and Trade Names, etc., 38 Cyc., p. 773, n. 12, p. 820,
n. 86, 87, 88, p. 821, n. 89, 90, 91.

From Douglas: James W. Hamilton, Judge.

Department 2.

This is a suit brought by the plaintiff Umpqua
Broccoli Exchange to enjoin the defendant Um-Qua
Valley Broccoli Growers from using as its corporate
name, or transacting business under the name of
"Um-Qua Valley Broccoli Growers," or any name
with the combination of the words "Umpqua" or
"Um-Qua" and "Broccoli" therein.

The trial court found that it did not appear from
the evidence that defendant's name was adopted by
those who organized defendant with the intent to de-
fraud plaintiff by means of the similarity of the name
of the two corporations; that while there has been
some confusion in the delivery of mail of defendant
to plaintiff, yet such misdelivery was through failure
to exercise ordinary care; that plaintiff had failed
to show any injury or damage likely to accrue to
them through the alleged similarity of names, and
dismissed plaintiff's complaint.  Plaintiff appeals.

The plaintiff corporation was organized and re-
ceived its charter in September, 1921, and during the
season of 1922 and 1923 carried on an extensive busi-
ness in the shipping and selling of broccoli, or winter
cauliflower, during which time it expended consider-

able sums of money in advertising itself as a seller and shipper of broccoli, and by its manager making several trips throughout the middle west and south acquainting himself with dealers in broccoli, and advertising his company and building up for itself a good name and trade.

The defendant is an Oregon corporation organized in May, 1923, formed by about forty growers of broccoli, in the Umpqua Valley, Douglas County, Oregon, organized and carried on for the purpose of marketing the products of its stockholders.

The defendant has expended considerable sums of money in the construction of a warehouse where it carries on the shipping business of its stockholders. The plaintiff did not file its articles of incorporation in Douglas County until after defendant was incorporated.

The principal business in which the plaintiff is engaged is the buying and selling and shipping of broccoli, the principal market for which is in the east, middle west and south; both the plaintiff and defendant shipping principally in carload lots and selling to jobbers and brokers, and practically all of the business being transacted by telegraph and mail orders. The sellers and shippers are known to the trade only by their respective corporate names and seldom come in direct contact personally with the buyers. The principal office and place of business of both plaintiff and defendant is in the City of Roseburg, Douglas County, Oregon.

The evidence discloses that the directors and other stockholders of the defendant Um-Qua Valley Broccoli Growers had been for years engaged in the business of growing broccoli in Umpqua Valley and

marketing the same prior to the incorporation of plaintiff Umpqua Broccoli Exchange.

Dr. C. H. Bailey and R. B. Cooley, two of defendant's stockholders, were the originators of the broccoli industry in the Umpqua Valley about the year 1914, Mr. Cooley at the time of the trial being secretary of the defendant. These persons were formerly stockholders and officers of the Umpqua Valley Fruit Union, which had been dissolved before the incorporation of either party to the suit.

The Umpqua Valley Fruit Union was a shipper of broccoli which was marketed under the name of "Um-Qua Broccoli"; the peculiar spelling of the word "Um-Qua" having been adopted in order to register a United States trademark. The words as so spelled, being inclosed within a double circle and followed by the word "Broccoli." Several years prior to the incorporation of either party to this suit, those who later incorporated the defendant marketed broccoli in this way, all crates and containers being marked "Um-Qua Broccoli." By reason of the business so conducted, and the advertising of the products of these persons, a large market became established for Umpqua Valley broccoli in different parts of the United States.

When the Umpqua Valley Fruit Union ceased to do business it assigned its trademark in the word "Um-Qua" to S. D. Cooley, who later became the secretary of defendant, and permitted defendant to make use of the trademark in the same way as the Umpqua Valley Fruit Union had used it.

The gist of plaintiff's complaint is that the defendant, well knowing the value, efforts and expenditures the plaintiff had given to the combination of the two words "Umpqua" and "Broccoli," and the advertis-

ing of plaintiff with intent to benefit therefrom without expense to itself and in fraud of the rights of the plaintiff, and over the protests of plaintiff, adopted the name of "Um-Qua Valley Broccoli Growers," thereby simulating plaintiff's name with intent thereby to reap the benefit from the combination of the words "Umpqua" and "Broccoli," made valuable by the good name, advertising and work of plaintiff.

It is further alleged that confusion has resulted in delivery of mail, telegrams and bills of lading; that the railroad company made a mistake in spotting a carload of crates. The evidence shows the delivery of a few pieces of mail to plaintiff which was intended for defendant, but no delivery of plaintiff's mail to defendant; no confusion in telegrams or express matter; and two cars of shooks were erroneously spotted by the railroad company. The errors that occurred were at the early stage of the business, soon after defendant was incorporated and was soon practically discontinued. The evidence does not show that plaintiff ever lost an order for broccoli because of defendants being in business. The manager of the Western Union Telegraph Company of the Roseburg office testified that his office had handled perhaps one thousand telegrams for plaintiff during the past season prior to the trial, without a single misdelivery. Some confusion existed in the box manufacturing plant where both parties purchased box shooks for their customers and where the customers or growers would resort to obtain the material for their crates.

Plaintiff also complains that the defendant engaged in the practice of selling cars of broccoli at auction, which was displeasing to the customers of plaintiff who charged the act to plaintiff.    Affirmed.

For appellant there was a brief over the name of *Messrs. Rice & Orcutt,* with oral arguments by *Mr. Ray B. Compton* and *Mr. Dexter Rice.*

For respondent there was a brief and oral argument by *Mr. B. L. Eddy.*

BEAN, J.—Plaintiff maintains that by reason of the fact that it first adopted the name "Umpqua Broccoli Exchange" as its corporate name and had built up a good reputation under such name the defendant should be enjoined from using as its corporate name any name similar to plaintiffs; that the use of the name so similar to plaintiff by defendant amounts to a piracy of plaintiff's name in business; that it is a fraud upon the plaintiff and is unfair competition. Defendant maintains there is no such similarity between the names "Umpqua Broccoli Exchange" and "Um-Qua Valley Broccoli Growers" as to justify an injunction; and there being no evidence of fraud, plaintiff cannot prevail. Defendant claims a prior right to use the trademark "Um-Qua" and that the predecessor in interest of defendant first used the combination of the words "Um-Qua Broccoli" in shipping their product.

1–5. There is no dispute about the facts in the case. It is practically conceded that a court of equity has jurisdiction in the consideration of the question involved.

Our statute, Or. L., Section 6861, provides thus:

"Whenever there shall be presented to the secretary of state for filing any articles of incorporation in which the name assumed by the proposed corporation shall appear to said secretary of state to resemble the name of a corporation previously formed under the laws of this state so closely as to be likely to cause

confusion, or when, in the opinion of the secretary of state, the name so assumed tends to mislead or deceive the public as to the character, purpose or plan of business of the proposed corporation, then the secretary of state may require, before filing such articles, that the name of the proposed corporation shall be changed."

A corporate charter grants no immunity in the use of a deceptive name. The same rule applies to corporate names as applies to the name of natural persons. The name may be used, but only if used honestly. A name selected and adopted for the purpose of deception and calculated to produce it will be enjoined. Corporate names will be protected from imitation constituting unfair competition. Injunction will be refused where no probability of deception by reason of the name is shown. Priority in adoption and user usually confers the superior right. In cases of alleged conflict of corporate names a court of equity is guided by the same principles that are applied in the protection of individuals in the use of trademarks and trade names. The question for consideration is whether the public purchasing the commodity or service in question will probably be deceived to the injury of plaintiff: 38 Cyc. 819 et seq.; *Danton* v. *Mohler Barber School,* 88 Or. 164 (170 Pac. 288).

In Nims on Unfair Competition and Trade Marks (2 ed.), page 163, Section 83, it is stated, in effect, that the incorporation of an organization in no way alters its rights as against those of other concerns using the same or a similar name. The act of incorporation gives it no right to demand that a rival should desist from using the common name.

6. It is not necessary in such cases to show by specific instances that purchasers have actually been de-

ceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of the plaintiff, or to deal with defendant thinking he was dealing with plaintiff. It is sufficient to show that such deception will be the natural and probable result of defendant's acts; but mere possibility of deception is not enough: 38 Cyc. 773; *Columbia Engineering Works* v. *Mallory,* 75 Or. 542, 547 (147 Pac. 542). See, also, *Union Fish Co-op. Packing Co.* v. *Point Adams,* 108 Or. 535, 549 (217 Pac. 642).

The Supreme Court of the United States once said: "There is no distinction between corporations and natural persons in the principle, which is to prevent fraud." (See *Waterman* v. *Modern Pen Co.,* 235 U. S. 88, 94 (59 L. Ed. 142, 35 Sup. Ct. Rep. 91, 92, see, also, Rose's U. S. Notes.)

7. Persons desiring to incorporate under a name they have previously used as the name of an organization not incorporated are not barred from so doing because of the fact that others had incorporated under that name subsequent to the time they began to use it as the name of an unincorporated organization. If they were the first to use the name and to become known by it, they cannot be denied the right to incorporate under that name because others have adopted their name and preceded them in incorporating under it. Any damage resulting to the plaintiff from such incorporation is chargeable to their folly in choosing a name already in use.

The principle here enunciated has some bearing upon the use of the trademark "Um-Qua" and the combination of the words "Um-Qua Broccoli," which were formerly used by the predecessors of defendant.

8, 9. In any case, to entitle the complaining corporation to an injunction, the name used by defendant,

when not the same as that of plaintiff, must be so similar thereto that,. under all the circumstances of locality, business, etc., its use is in itself reasonably calculated to deceive the public and result in injury to plaintiff, or else it must be used fraudulently in such a way as to have that effect. Unless the words have acquired in the mind of the public a secondary meaning as denoting the goods or business of a particular company, a corporation cannot acquire the right to the exclusive use of geographical words in its corporate name, or words merely generic or descriptive of a particular business, class of goods, etc., which anyone may lawfully use, so as to be entitled to enjoin their use by another corporation or association in its name, in the absence of actual fraud or intent to deceive: 14 C. J. 328, § 397; *Elgin Butter Co.* v. *Elgin Creamery Co. (Sands)*, 155 Ill. 127 (40 N. E. 616); *Elgin Nat. Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665 (45 L. Ed. 365, 21 Sup. Ct. Rep. 270, see, also, Rose's U. S. Notes); *Delaware & H. Canal Co.* v. *Clark*, 80 U. S. 311 (20 L. Ed. 581); *Nebraska Loan & Tr. Co.* v. *Nine*, 27 Neb. 507 (43 N. W. 348, 20 Am. St. Rep. 686); *Kansas Mill Co.* v. *Kansas Flour Mill Co.*, 89 Kan. 855 (133 Pac. 542, Ann. Cas. 1915A, 540, and note). In the note in that volume, at page 543, we find the following:

"The recent cases affirm the previously settled rule, that a geographical name, or term, by which is meant a term denoting locality, cannot be exclusively appropriated as a trademark or trade name, because such a term is generic or descriptive, and any one who can do so truthfully is entitled to use it." Citing *American Wine Co.* v. *Kohlman*, 158 Fed. 830; *Wolf* v. *Hamilton Brown Shoe Co.*, 165 Fed. 413 (91 C. C. A. 363), and many other precedents * * "The rule heretofore laid down is, however, subject to the exception that where a geographical name has been so used in

connection with a certain line of business that it has come to indicate, not only the place of manufacture or production, but the name of the manufacturer or producer and the excellence of the article made, then it has acquired such a secondary significance or meaning as will entitle the one who has so used it to protection in its use by means of an injunction restraining others from using the name in a manner that will mislead buyers as to the actual origin or quality of .the thing sold, or enable the sellers to palm off their goods as those of the prior user." Citing *Herring Hall Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554 (52 L. Ed. 616, 28 Sup. Ct. Rep. 350).

It is disclosed by the testimony of Mr. R. H. C. Wood, manager of the defendant corporation, that he and his associates, the stockholders of defendant, who were largely growers of broccoli for several years before the defendant was incorporated, shipped their product through the old Umpqua Valley Fruit Union. In selling the broccoli they marked the crates "Um-Qua Valley Broccoli," and the other association of growers named, shipped broccoli in about the same manner prior to the organization of defendant. It was shipped to different parts of the United States. Therefore the defendant claims that the Umpqua Valley Fruit Union first used the combination of the words "Umpqua" and "Broccoli."

The present method of marking the crates of broccoli shipped by defendant is as follows:

The name of the company, " 'Um-Qua' Valley Broccoli Growers," is printed on each crate with the trademark, " 'Um-Qua' Broccoli," "Roseburg, Oregon," together with the grade and name of the grower stamped on the crate with a rubber stamp. The Umpqua Valley Fruit Union marked the crates of broccoli in the same manner that the defendant does except as to the name of the corporation. The

first name of the defendant corporation "Um-Qua" was so spelled to correspond with its trademark and with no intent to simulate the name of plaintiff.

10. Undoubtedly the word "Umpqua" or "Um-Qua" is a geographical word. "Broccoli" is a generic term. The plaintiff cannot acquire the exclusive right to the use of either of these words in its corporate name. The word "Umpqua" or "Um-Qua" has no secondary or particular meaning as denoting the business or products of plaintiff. That name, however, spelled, pertains to the place where broccoli is raised in large commercial quantities. In the absence of actual fraud or intent to deceive the defendant has a right to use the word in its corporate appellation.

"Broccoli" is merely descriptive of winter cauliflower, or a vegetable, and the word cannot be monopolized as a part of a corporate name. There is a marked difference in the names of plaintiff and defendant. Plaintiff's name consists of the three words designating an "exchange." It buys, ships and sells broccoli and other similar products. Defendant's name is composed of four words, two of which have no similarity to any part of plaintiff's name. Its name suggests that it or its organizers and stockholders are "growers" of broccoli. As its name indicates, the people associated under this name are and have been for many years engaged in raising broccoli. The defendant markets the products so grown. The public, or any member thereof, by the use of reasonable diligence and discrimination, which is presumed by the law to be used, can easily distinguish one name from the other: *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.*, 220 U. S. 446; 2

117 Or.—44

Fletcher, Cyclopedia Corp., 1662. Under all the circumstances we do not think there is any probability of anyone being deceived or misled by the similarity of the two names to the injury of plaintiff. See, also, 2 Fletcher, Cyc. Corp., 1677, § 734; *Diamond Drill Co.* v. *International Diamond Drill Co.,* 106 Wash. 72 (179 Pac. 120, at page 122).

11. The corporation commissioner is the successor of the Secretary of State in the matter of passing upon the selection of a name of a corporation under the statute above quoted (Or. L. 6861). It must be presumed that under the circumstances as to the incorporation of defendant, official duty has been performed. That official examined the articles of incorporation of the defendant and found no objection thereto. It would seem that the exercise of discretion of the corporation commissioner should not be interfered with except in cases of abuse: Section 14 C. J., p. 314; *American Order of Scottish Clans* v. *Merrill,* 151 Mass. 558 (24 N. E. 918, 8 L. R. A. 320).

The learned trial judge who tried this case found, in effect, upon consideration of all of the facts and circumstances in the case, in conformity with the corporation commissioner.

Each case involving a question like that in the present case must largely be determined upon its own characteristics. No hard-and-fast rules can be laid down by the courts which would dispose of all cases. The courts under the variant facts and circumstances have many times applied the principles set forth in the rules above referred to.

It follows that the decree of the lower court should be affirmed. It is so ordered.    AFFIRMED.

MCBRIDE, C. J., and BROWN and BELT, JJ., concur.