Argued February 15, reversed May 10, 1961

# THE 88¢ STORES, INC. *v.* MARTINEZ
### 361 P. 2d 809

*Donald E. Kettleberg,* Portland, argued the cause for appellant. With him on the brief were Milton O. Brown and Garrett L. Romaine, Portland.

*Richard E. Miller,* Eugene, argued the cause for respondent. With him on the brief was John R. Gilbertson, Portland.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Lusk, Justices.

O'CONNELL, J.

This is a suit in equity in which plaintiff seeks to enjoin the use of its alleged trade name and to recover damages for past use. The trial court granted an injunction and gave judgment in the amount of $2,500 for past infringement.

In 1956 plaintiff originated the idea of selling the various items of merchandise in its store at a single price of 88 cents. It adopted the name "The 88¢ Store" and developed its advertising around the idea that all items of merchandise offered for sale in its store were "one price," viz., 88 cents. The repetition of the num-

ber "8" was further carried out in its advertising slogan "8888 items at 88¢."

This technique of merchandising proved so successful that others sought its use and eventually plaintiff enfranchised nine stores in Oregon and several others in Washington and California to use the name "The 88¢ Store," at a monthly charge of fifty dollars.

In 1959 defendant opened a store in the city of Portland using the name "Gil's Super 88¢ Store." Most of the items of merchandise in defendant's store are sold at 88¢; but some items are sold at a higher price, and when several items together are priced at 88¢ a single item in that group may be sold at the proportionate fraction of 88¢. Defendant has used advertising indicating that he offers "8888 items at 88¢." He testified that he got the idea of opening an 88¢ store when he was "wholesaling for a while to a lot of 88¢ stores," and that he was finally prompted to adopt this method of merchandising in his store when various wholesale companies offered a catalogue of items all priced to sell at 88¢.

Defendants store was located within one mile of one of the stores enfranchised by plaintiff. Under the terms of the franchise agreement the enfranchisee was to be free from competition from 88¢ stores within a mile radius. For a period of seven months prior to the filing of the complaint in the present action the Portland enfranchisee refused to pay the $50 monthly franchise fee, on the ground that he was subjected to competition from defendant's store.

Plaintiff's complaint alleges that plaintiff and its franchise holders have an established reputation for selling merchandise of good quality at a low price; that many of its customers purchase merchandise from

plaintiff and its enfranchisees in reliance upon their reputation for such merchandising; that the name "The 88¢ Store" has become distinctive and has acquired a secondary meaning identifying the stores of plaintiff and its franchise holders; that defendant appropriated plaintiff's name in an effort to deceive and cheat the public by inducing them to believe that they were dealing with plaintiff or its associates; all of which causes the public to be confused as to the ownership of defendant's store, identifying it with plaintiff, and deprives plaintiff and its associates of sales and business good will. It is alleged that defendant's use of plaintiff's name constitutes unfair competition resulting in damage to plaintiff in the amount of $10,000.

■ The designation, "The 88¢ Store" is unquestionably a descriptive term. It announces to the public in an elliptical way the information that the merchandise offered for sale is priced at 88 cents. If plaintiff's name is solely descriptive the law affords plaintiff no remedy against those who imitate it. *Truck Ins. Ex. v. Truck Ins. Ex.,* 165 Or 332, 365, 107 P2d 511 (1940); *Liquidators v. Clifton,* 132 Or 448, 286 P 152 (1930); *Kellogg Co. v. Nat. Biscuit Co.,* 305 US 111, 116-117, 59 S Ct 109, 83 L Ed 73 (1938); *Keller Products v. Rubber Linings Corp.,* 213 F2d 382 (7th Cir 1954); *General Industries Co. v. 20 Wacker Drive Bldg. Corp.,* 156 F2d 474 (7th Cir 1946); *Choynski v. Cohen,* 39 Cal 501 (1870); 3 Restatement, Torts, §§ 716(b), 721 (1938). Plaintiff concedes as much, but contends that the name has overtones which cause the public to understand it as signifying not a method of merchandising, but rather as being informative of the origin or source of the goods and services purveyed in the stores bearing that name. That is, plaintiff contends that the predominant meaning, in the minds of present and

prospective consumers, is that the name identifies him or his enfranchisees as the source of the goods or services, or at least, that it indicates that all stores similarly denominated feature goods or services sponsored by a common source, although the identity of that common source may be unknown to the general consuming public.

■ This concept of the business name denoting an association of the goods or services with a common source is known as the secondary meaning doctrine. *Kellogg Co. v. Nat. Biscuit Co.*, 305 US 111, 118, 59 S Ct 109, 83 L Ed 73 (1938); *Barton v. Rex-Oil Co.*, 2 F2d 402, 405 (3rd Cir 1924), decree modified 29 F2d 474 (3rd Cir 1928); *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F 299 (2nd Cir 1917); *G. & C. Merriam Co. v. Saalfield*, 198 F 369, 373 (6th Cir 1912); *Brooks Bros. v. Brooks Clothing of California*, 60 F Supp 442, 450 (D.C. S.D. Cal. 1945); 1 Nims, Unfair Competition and Trade-Marks (4th ed 1947) § 37; 3 Restatement, Torts, § 716(b) (1938); Note, Trade Names: Protection Accorded Under Secondary Meaning Doctrine, 6 Fla L Rev 256 (1953); Note, Unfair Competition—Secondary Meaning of Trade Names—Injunctive Relief, 13 Ohio St L J 303 (1952); Note, The Doctrine of Secondary Meaning, 62 W Va L Rev 254 (1960). And, it is essential that plaintiff's business name have acquired a secondary meaning before it can be considered a protectible trade name. 3 Restatement, Torts, § 716(b), Comment b (1938).

■ To acquire a secondary meaning a business name must acquire a special significance to the purchasing public. As stated in 3 Restatement, Torts, § 716, Comment b, p. 560 (1938):

 "* * * The issue in each case is whether or not in fact a substantial number of present or pros-

pective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association."

■ If a name acquires a secondary meaning, the originator of the name is entitled to exclude use of it by others to the extent that the imitator's use causes or is likely to cause confusion of source in the market. 3 Restatement, Torts, Ch 35 (1938). Confusion of source results if the imitator's use of the name misleads present or prospective purchasers into believing that the imitator's goods or services are in fact those of the originator of the trade name, with the attendant consequences of diverting business from the originator or obtaining the benefits of the originator's advertising or otherwise interfering with his protectible business interests. 3 Restatement, Torts, §§ 728-730, and especially Comment a to § 730 (1938). See, *Federal Secur. Co. v. Federal Secur. Corp.*, 129 Or 375, 394, 276 P 1100, 66 ALR 934 (1929); *Triangle Publications v. Rohrlich*, 167 F2d 969, 981 (2nd Cir 1948) (dissenting opinion per Frank, J.); *Best & Co. v. Miller*, 167 F2d 374, 376-377 (2nd Cir 1948); *Esso, Inc. v. Standard Oil Co.*, 98 F2d 1, 5 (8th Cir 1938); Comment, Developments in the Law: Trade-Marks and Unfair Competition, 68 Harv L Rev 814, 850 (1955).

■ Whether a secondary meaning is associated with a name and whether confusion has resulted or is likely to result from the appropriation of a name by a subsequent user are questions of fact in each case. *Triangle Publications v. Rohrlich*, 167 F2d 969, 972, and dissenting opinion per Frank, J., 974, 976 (2nd Cir 1948); *Best & Co. v. Miller*, 167 F2d 374, 376, 377 (2nd Cir 1948); *Little Tavern Shops v. Davis*, 116 F2d 903,

906 (4th Cir 1941); *Landers, Frary & Clark v. Universal Cooler Corporation,* 85 F2d 46, 48 (2nd Cir 1936); *Atlas Assurance Co. v. Ins. Co.,* 138 Iowa 228, 112 NW 232, 233 (1907), modified 114 NW 609; *Drive It Yourself Co. v. North,* 148 Md 609, 130 A 57, 60, 43 ALR 206 (1925); *Rogers v. Broughton,* 250 SW2d 606-607 (Tex Civ App 1952); 1 Callman, Unfair Competition and Trade-Marks (2nd ed 1950), § 7.3 (1959 Cum. Supp.); 3 Restatement, Torts, § 716, Comment b, § 728, Comment a (1938). The burden of proving the facts of secondary meaning and confusion of source is on the plaintiff. *Kellogg Co. v. Nat. Biscuit Co.,* 305 US 111, 118-119, 59 S Ct 109, 83 L Ed 73 (1938); *Norwich Pharmacal Company v. Sterling Drug, Inc.,* 271 F2d 569, 572-573 (2nd Cir 1959); *Checker Food Products Co. v. Ralston Purina Co.,* 232 F2d 477, 480-481 (8th Cir 1956); *Keller Products v. Rubber Linings Corp.,* 213 F2d 382, 386 (7th Cir 1954); *Hiram Walker & Sons v. Penn-Maryland Corporation,* 79 F2d 836, 838-839 (2nd Cir 1935); *Kellogg Toasted Corn Flake Co. v. Quaker Oats Co.,* 235 Fed 657, 664 (6th Cir 1916); *Riverbank Laboratories v. Hardwood Products Corp.,* 165 F Supp 747, 757 (D.C. N.D. Ill 1958); *Food Fair Stores v. Square Deal Market Co.,* 109 F Supp 637, 638 (D.C. Dist. Col. 1952); *Hospital Liquids, Inc. v. G. H. Sherman, M.D., Inc.,* 38 F Supp 828 (D.C. E.D. Mich 1941); *De Long Hook & Eye Co. v. Hump Hairpin Mfg. Co.,* 297 Ill 359, 130 NE 765, 769 (1921); *Silbert v. Kerstein,* 318 Mass 476, 479, 62 NE2d 109 (1945); *Renofab Process Corp. v. Renotex Corporation,* 158 NYS2d 70, 76-78 (Misc 1956); *Harrelson v. Wright,* 339 SW2d 712, 714 (Tex Civ App 1960); *Dixiepig Corporation v. Pig Stand Co.,* 31 SW2d 325, 326-327 (Tex Civ App 1930); *Zimmerman v. B. & C. Motel Corporation,* 401 Pa 278,

163 A2d 884, 886 (1960); 2 Nims, Unfair Competition and Trade-Marks (4th ed 1947), § 336.

The right of an entrepreneur to designate his business by the use of descriptive words already employed by another person as a business name has been recognized in our own cases. In *Truck Ins. Ex. v. Truck Ins. Ex.*, 165 Or 332, 107 P2d 511 (1940), both the plaintiff and the defendant used the term "Truck Insurance Exchange" in their respective business names. Plaintiff sought to enjoin the use of the term by defendants as a part of its business name. In denying relief this court, speaking through Mr. Justice ROSSMAN, said:

"No one can dip into the common vocabulary and, selecting some generic or descriptive words which commonly designate the business activities in which people engage, as, for instance, grocery store, appropriate the words to himself and thereby forbid their use by others who desire to launch similar enterprises. The words 'Truck Insurance Exchange', which both the plaintiff and one of the defendants employ as their names, is a term of that kind and, therefore, incapable of exclusive appropriation." 165 Or at page 365.

The court went on to note that a descriptive term may acquire a secondary meaning but that the plaintiff had failed to prove such meaning or that the public had been confused by defendants' use of the name.

In *Liquidators v. Clifton*, 132 Or 448, 286 P 152 (1930), plaintiff corporation, doing business under the name "Liquidators" brought suit to enjoin the defendant from using the name "Bonded Liquidator Co." The court said:

"* * * On the other hand, a corporation in selecting for a trade name a generic term which is descriptive of the business in which it proposes to engage, assumes some risk of injury resulting from

confusion of trade names, since no one can exclusively make such an appropriation. 'Liquidators' is a generic term and it describes the character of business carried on by plaintiff. It is broad and comprehensive enough to include a collection business. There are, no doubt, several hundred firms in the city of Portland whose business is to liquidate or collect accounts. Why should one company be permitted thus to monopolize a trade name of such character? If an exclusive appropriation can thus be made, then, with like reason, there might be a monopoly in the use of such names as 'Adjusters,' 'Printers,' and 'Lawyers.'" 132 Or at page 450-451.

The court found that the plaintiff's name had not acquired a secondary meaning.

In *Federal Secur. Co. v. Federal Secur. Corp.*, 129 Or 375, 276 P 1100, 66 ALR 934 (1929), plaintiff brought suit to enjoin defendant's use of the name "Federal Securities Corporation." The court recognized that "one corporation cannot restrain another from using in its corporate title a name or a word to which all others have a common right" (129 Or at p. 382-383), unless a secondary meaning is established. In other Oregon cases the right to use a descriptive term, although already used by another person as a business name, has been recognized. *Duniway Pub. Co. v. N. W. Prt'g. Co.*, 11 Or 322, 8 P 283 (1884) (plaintiff's newspaper title "The New Northwest" not infringed by defendant's adoption of the name "The Northwest News" for its paper); *Lichtenstein v. Mellis*, 8 Or 464, 34 Am Rep 592 (1880) (the name "I X L General Merchandise Auction Store" not infringed by use of name "Great I X L Auction Company"); *Umpqua B. Exch. v. Um-Qua V. B. Growers*, 117 Or 678, 245 P 324 (1926) (geographical and descriptive name

of "Umpqua Broccoli Exchange" not infringed by "Um-Qua Valley Broccoli Growers").

In other Oregon cases the use of a similar name has been enjoined where confusion was established. *Milgrim Bros. v. Schlesinger,* 168 Or 476, 123 P2d 196 (1942) (defendant enjoined from using plaintiff's nationally known name of "Milgrim" as either trade name or trademark); *Starr v. Hotelling,* 168 Or 207, 122 P2d 432 (1942) (defendant's name of "Portland Cleaners" enjoined as infringing upon plaintiff's established name of "Portland Cleaning Works"); *Danton v. Mohler Barber School,* 88 Or 164, 170 P 288 (1918) (plaintiff's claim of infringement of his trade name of "Moler Barber College" by defendant's use of name of "Mohler Barber School" held to state a cause of action); *Wood v. Wood,* 78 Or 181, 151 P 969, LRA 1916C, 251, Ann Cas 1918A 266 (1915) (defendant enjoined from using name of "W. E. Wood Realty Company" in city where plaintiff's firm of "Wood Realty Company" was well established).

In the case at bar the evidence that consumers were confused or were likely to be confused by associating defendant's store with those of the plaintiff or plaintiff's franchise holders was not substantial. No consumers were called as witnesses to testify with respect to confusion. Mr. Calavan, the president of plaintiff corporation, testified on cross examination as follows:

"Q Do you have any knowledge, of your own personal knowledge, that the public has been deceived by Mr. Martinez's operation?

"A The general public have in this respect, that they think that he is—would be one of our chain of stores, our franchise store, and when they came through, they say 'Well, you certainly don't have near the store in Portland—the one on Third Street, that you have here.

"Q People have actually said that to you, is that your testimony?

"A Yes. That is clarified—

"Q Pardon me.

"A That is clarified as soon as they say it—that it isn't."

Mr. Sanders, a franchise holder in Corvallis, Oregon testified:

"A The name 88¢ does have a meaning. It is a big magic word method of merchandising. It will be a new concept of merchandising, which we feel that it is, and it has definitely become a magic figure acceptable to the public, readily acceptable.

"Q Let me ask you this: Has the name '88¢ Stores' come to mean anything to the public?

"A I definitely feel it has.

"Q How has it?

"A They know that it is—can I say—answer in this respect—that many people told me that when they are looking for an item they shop at the '88¢ Store' first.

"Q Now in your opinion—do you feel you can render an opinion who the public identifies that name with?

"A With just a general person. There will naturally be people in any town that don't know Dick Calavan. He might have an item in there that I haven't got in yet, and we find out about it just as fast as I would in talking with him on the telephone.

"Q Just in the general conversation?

"A Yes. They come in and say, 'I saw this in Eugene. How come you haven't got it?' "

■ The testimony of several wholesale tradesmen who sold merchandise to plaintiff tended to show that the stores of plaintiff and its enfranchisees were identified with the name "The 88¢ Stores." But this evidence

has little value in establishing a secondary meaning because, as pointed out in *Application of Duvernoy & Sons, Inc.*, 212 F2d 202, 203 (Customs & Patents Appeals 1954), "attestations from persons in close association and intimate contact with its [the trademark claimant's] business * * * do not reflect the views of the purchasing public" with respect to the distinctiveness of claimant's name. See also, Comment, Developments in the Law: Trade-Marks and Unfair Competition, 68 Harv L Rev 814, 862 (1955). Admittedly, the difficulty of obtaining evidence to establish secondary meaning and confusion is great. See, Caughey, The Use of Public Polls, Surveys and Sampling as Evidence in Litigation, and Particularly Trademark and Unfair Competition Cases, 44 Calif L Rev 539 (1956); Note, Consumer Polls as Evidence In Unfair Trade Cases, 20 Geo Wash L Rev 211 (1951); Note, Public Opinion Surveys as Evidence: The Pollsters Go To Court, 66 Harv L Rev 498 (1953).

■ It would seem likely that the term "88¢ Store" or "The 88¢ Store" would ordinarily mean to the prospective purchaser no more than the term five and ten cent store means to him, i.e., an announcement of the price at which the merchandise is offered for sale. If there is another meaning which overrides the descriptive sense of these words, plaintiff must prove it. To establish such other meaning "the likelihood that prospective purchasers will regard the use of the designation in the manner stated [i.e., "as the name of, or the means of identifying, his goods, services or business"] must be substantial." 3 Restatement, Torts, § 727, Comment c (1938). As this court has observed, "[m]ere possibility of deception is not enough." *Columbia Engineering Wks. v. Mallory*, 75 Or 542, 547, 147 P 542 (1915). It may be observed that defendant

did not use the name "The 88¢ Store"; rather he designated his business as "Gil's Super 88¢ Store," thus identifying the store with his own name, and by the use of the word "super" intimating at least that others were competing in the same business.

 Apparently it is plaintiff's position that in spite of these distinguishing designations in defendant's business name, the public might confuse defendant's store with the store of one or more of plaintiff's franchise holders, i.e., that prospective purchasers would be likely to confuse "Gil's Super 88¢ Store" with a franchised store with a name such as "Joe's 88¢ Store" or some similar designation. But even assuming that plaintiff has created a secondary meaning in the use of the name "The 88¢ Store" or any other name, plaintiff has no right to restrict the use of that name except as the use interferes with plaintiff's sale of *merchandise,* or the sale of merchandise by plaintiff's enfranchisees over which plaintiff has controls relevant to the quality of the goods or services which the alleged trade name purports to represent. *Smith v. Dental Products Co.,* 140 F2d 140, 145-148 (7th Cir. 1944); *Everett O. Fisk & Co. v. Fisk Teachers' Agency,* 3 F2d 7, 8-9 (8th Cir. 1924); *Morse-Starrett Products Co. v. Steccone,* 86 F Supp 796, 805 (D.C. N.D. Cal. 1949); Sage, Trade-Mark Licenses and "Control," 43 Trademark Reporter 675 (1953); Comment, Developments in the Law: Trade-Marks and Unfair Competition, 68 Harv L Rev 814, 867-874 (1955); Note, Trade Mark Law—Valid Use of Trade Mark by Other Than Owner, 23 N Y U L Q Rev 482 (1948). In the absence of such control, the goods or services are not treated as emanating from a common source, an essential element of a common law trademark or trade name. The law of unfair competition does not protect the origi-

nator of a trademark or a trade name in the sale or licensing of the *name* unassociated with the sale of goods or the business itself, in the absence of retention of sufficient control by the originator. As was said in *Truck Ins. Ex. v. Truck Ins. Ex.*, 165 Or 332, 366, 107 P2d 511 (1940), "It is always the business, and not the name, which is protected in suits of this character." The principle is concisely stated in the black-letter heading of 3 Restatement, Torts, § 755 (1938): "A right to the use of a trademark or trade name cannot be transferred in gross."①

■ Plaintiff did not offer any evidence to prove a loss through the diversion of business from its own stores. The only evidence of damage to plaintiff was the loss of the $50 monthly franchise fee for a period of seven months from one of its franchise holders. Plaintiff's franchise holders did not sell any of plaintiff's merchandise. And the evidence failed to show that plaintiff had control over the goods or services of its franchise holders designed and effective to protect the name which plaintiff claims as his exclusive property. Therefore, plaintiff has no right to recover damages for any diversion of trade in the operation of those stores.

---

① Comment b to § 755 elaborates this idea as follows: "* * * The right to exclude others from the use of the symbol is granted in order to protect that source against the sale of another's goods or services as emanating from it. The interest in a trade-mark or trade name is protected, then, not because of any quality in the mark itself, such as invention or artistic merit, but only as a means of protecting the good will of the source which the mark symbolizes. The good will thus protected is earned by and attached to that source and not to the symbol itself. When the mark is completely separated from that source, it cannot truthfully evoke that good will or serve as a means of protecting it. Use of the trade-mark or trade name in the sale of goods or services in no way associated with that source, even when that use is made by one to whom the trade-mark or trade name was sought to be transferred in gross, constitutes a material misrepresentation to prospective purchasers and is therefore not protected (see § 749, Comment f). The assignment of a trade-mark or trade name by itself does not pass to the assignee any right to exclude third persons from the use of the symbol."

■ It becomes apparent that plaintiff is claiming the protection of a business idea—the idea of merchandising goods at a single price. The evidence leaves no doubt that the idea is a good one, commercially speaking. The single fact that other merchants are willing to pay a franchise fee for the use of the idea is quite conclusive that the idea is commercially valuable. But an idea which is neither patented nor copyrighted cannot be monopolized by its originator unless it qualifies as the protectible trademark or trade name. As we have shown, that protection is not extended to the *sale* of the trade name itself. The observation of Judge L. Hand in *S. C. Johnson & Sons v. Johnson,* 116 F2d 427, 429 (2nd Cir. 1940) is appropriate here:

> "* * * We are nearly sure to go astray in any phase of the whole subject, as soon as we lose sight of the underlying principle that the wrong involved is diverting trade from the first user by misleading customers who mean to deal with him."

There is a view, strongly asserted, that original ideas for business methods or systems should be protected as a part of the relief available against unfair competition. 2 Callmann, Unfair Competition and Trade-Marks (2nd ed 1950) ch 15, *passim,* and especially introductory text pp. 875-877 and § 61.4, § 62, p. 906, § 62.2; Callmann, He Who Reaps Where He Has Not Sown: Unjust Enrichment in the Law of Unfair Competition, 55 Harv L Rev 595, 612 (1942); Rogers, The Ingenuity of the Infringer and the Courts, 11 Mich L Rev 358, 373 (1913). But the courts have generally rejected such claims to exclusive use. *Eastern Wine Corporation v. Winslow-Warren, Ltd.,* 137 F2d 955, 959 (2nd Cir. 1943); Zlinkoff, Monopoly Versus Competition: Significant Trends in Patent, Anti-Trust, Trade-Mark and Unfair Competition Suits,

53 Yale L J 514, 529, 546-551 (1944). Protection against imitation by competitors has been denied in a great variety of situations. *Warner & Co. v. Lilly & Co.*, 265 US 526, 44 S Ct 615, 68 L Ed 1161 (1924) (competitor entitled to utilize same ingredients in pharmaceutical preparations) ; *Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp.*, 202 F2d 172 (3rd Cir. 1953) (imitator entitled to copy all functional aspects of can-opener) ; *Kraus v. Newman,* 178 F2d 655 (2nd Cir. 1949) (injunction to restrain manufacture and merchandising of toy plastic chicken similar to plaintiff's product denied) ; *Dixi-Cola Laboratories v. Coca-Cola Co.,* 117 F2d 352 (4th Cir. 1941) ("Dixi-Cola" not an infringement of "Coca-Cola") ; *Colburn v. Puritan Mills, Inc.,* 108 F2d 377 (7th Cir. 1939) ("Py-Do" not infringed by "Py-O-My," a pie-dough product) ; *Warner Publication v. Popular Publications, Inc.,* 87 F2d 913 (2nd Cir. 1937) (sale of magazine entitled "Rangeland Romances" not unfair competition with respect to "Ranch Romances" magazine) ; *Estate Stove Co. v. Gray & Dudley Co.,* 41 F2d 462 (6th Cir. 1930) (competitor entitled to copy design of plaintiff's heater which was housed in a victrola cabinet) ; *Cheney Bros. v. Doris Silk Corporation,* 35 F2d 279 (2nd Cir. 1929) (originator of unpatented apparel designs denied injunction to prevent copying) ; *Moline Pressed Steel Co. v. Dayton Toy & Specialty Co.,* 30 F2d 16 (6th Cir. 1929) (plaintiff, original marketer of toy replicas of trucks, not entitled to enjoin defendant's marketing of similar toys) ; *Upjohn Co. v. Merrell Chemical Co.,* 269 F 209, 212 (6th Cir. 1920) (plaintiff, failing to prove secondary meaning in design, denied injunction where defendant copied size, shape and color of drug tablets) ; *Continental Casualty Company v. Beardsley,* 151 F Supp 28, 42-45 (D.C. S.D. New York 1957)

(competitor may adopt business scheme of purveyor of plan for replacement of lost securities). There are cases which take a contrary view. *Santa's Workshop v. Sterling,* 2 App Div2d 262, 153 NYS2d 839 (1956) (owner of amusement enterprise entitled "Santa's Workshop" granted injunction restraining defendant from using the name "St. Nick" or portrayals of Santa Claus in connection with defendant's business of animal display); *Avon Periodicals v. Ziff-Davis Pub. Co.,* 282 App Div 200, 122 NYS2d 92 (1953) (defendant enjoined from using word "Eerie" on "comic" magazine although plaintiff failed to establish secondary meaning).

This conflict in the cases reflects the choice between two competing ideas—on one hand the idea that one should be entitled to reap the fruits of his own creativeness and ingenuity; on the other hand the idea that economic competition rather than monopoly should be encouraged. The conflict may be roughly described as one between the principles of monopoly and competition. *Standard Brands v. Smidler,* 151 F2d 34, 37, 38 (2nd Cir. 1945) (concurring opinion, Frank, J.); *Germanow v. Standard Unbreakable Watch Crystals,* 283 N Y 1, 27 NE2d 212, 216 (1940); Comment, The Extension of Trademark Protection to Non-Competitive Relationships, 44 Illinois L Rev 182, 197 (1949); Brown, Advertising and The Public Interest: Legal Protection of Trade Symbols, 57 Yale L J 1165, 1206 (1948); Zlinkoff, Monopoly Versus Competition: Significant Trends in Patent, Anti-Trust, Trade-Mark, and Unfair Competition Suits, 53 Yale L J 514 (1944). But see, *Hyde Park Clothes v. Hyde Park Fashions,* 204 F2d 223, 226, 229 (2nd Cir. 1953) (dissenting opinion, Clark, J.); *Eastern Wine Corporation v. Winslow-Warren, Ltd.,* 137 F2d 955, 957-959 (2nd Cir. 1943);

Callmann, One Year Under the Lanham Act, A Practitioner's Viewpoint, 38 Trademark Reporter 857 (1948); Rogers, Unfair Competition, 17 Mich L Rev 490 (1919).

The clear trend of the cases is in the direction of recognizing the right to compete and in doing so to appropriate the ideas developed by others. Illustrative of this point of view is *Chas. D. Briddell, Inc. v. Alglobe Trading Corp.*, 194 F2d 416 (2nd Cir. 1951). In that case plaintiff manufactured steak knives with a unique shape and which were packaged in a distinctive colored plastic case. Through extensive advertising amounting to $250,000 for the year preceding the trial, plaintiff developed a customer demand for its knives. The defendant imitated the shape of plaintiff's knives and containers and offered them on the market at approximately one half the price charged by plaintiff. Plaintiff brought suit to enjoin this practice. The Court of Appeals for the Second Circuit, Judge Clark dissenting, denied the injunction. The court, speaking through Judge Frank, said:

"* * * The fact that the design of an article is strikingly novel and beautiful, and the fact that its first producer has spent large sums in advertising which has made the article popular with consumers, give that first producer no rights against others who subsequently imitate it and (taking advantage of the consumer-popularity of the article, due to the first producer's advertising) sell it competitively—unless the first producer has a monopoly based upon (1) a patent on the design or (2) a so-called secondary meaning. Absent (1) and (2), the first producer has no legal complaint because the imitators have been enriched by his efforts, have enjoyed what is known as a 'free ride.' For the common law favors competition; and it is of the essence of competition that competitors copy

and undersell the product of an originator. The competitors do not lose their favored common-law position merely because someone chooses to call them 'free riders.' To have protection from such competition, the originator must possess some sort of monopoly." 194 F2d at page 418.

It was further pointed out that if, under such circumstances, the originator of an idea were entitled to protection (i.e., a common law design copyright, which is nonexistent) through the equitable remedy against unfair competition, he "would be free of the constitutional provision limiting the life of a copyright," and that the plaintiff would thus enjoy "a perpetual monopoly."② (194 F2d at page 419). See also, *Cheney Bros. v. Doris Silk Corporation*, 35 F2d 279 (2nd Cir. 1929).

Although the Briddell case involved the appropriation of a design, the same principle applies to the appropriation of a business method or scheme. *Baker v. Selden*, 101 US 99, 25 L Ed 841 (1879); *Continental Casualty Company v. Beardsley*, 151 F Supp 28 (D.C. S.D. New York 1957); *Aldrich v. Remington Rand*, 52 F Supp 732 (D.C. N.D. Tex 1942). Perhaps the leading case recognizing the right to copy a competitor's ideas is *Kellogg Co. v. Nat. Biscuit Co.*, 305 US 111, 59 S Ct 109, 83 L Ed 73 (1938). There suit was brought to enjoin the manufacture and sale of shredded wheat cereal. The court held that the plaintiff originator did not have the right to the exclusive use of the

---

② The same idea is expressed in Handler, Unfair Competition, 21 Iowa L Rev 175, 189-191 (1936): "Monopolies created by legislation may be restricted and regulated so as to operate, partially at least, in the public interest. Judge-made monopolies find their origin and their regulation in the law of torts and the protection of the public interest is at best unsystematic and fortuitous.

"* * * We must look to the legislature for any fundamental change of doctrine and for the shaping of the compromise which will provide some measure of protection to the fruits of originality without shackling the competitive system."

term "shredded wheat," nor of the pillow shape in which the product had been manufactured. Speaking for the majority of the Court, Mr. Justice Brandeis said:

> "Kellogg Company is undoubtedly sharing in the goodwill of the article known as 'Shredded Wheat'; and thus is sharing in a market which was created by the skill and judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested." 305 US at 122.

See also, *Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co.*, 147 F2d 500, 503 (2nd Cir. 1945); *Electric Auto-Lite Co. v. P. & D. Mfg. Co.*, 109 F2d 566, 567 (2nd Cir. 1940); *Lewis v. Vendome Bags*, 108 F2d 16, 18 (2nd Cir. 1939); *Mavco, Inc. v. Hampden Sales Ass'n.*, 273 App Div 297, 77 NYS2d 510 (1948).

Plaintiff argues in his brief that "A demand for goods created by advertising belongs to the advertiser, and he will be protected therein against unfair competition by another who seeks in any way to take advantage of such advertisement to sell his own goods." The statement is too broad. A trade name may be, in addition to its indicia of source, a valuable advertising device. 3 Restatement, Torts, § 730, p. 597 (1938). The advertising function of trade names is carefully examined in Brown, Advertising and the Public Interest: Legal Protection of Trade Symbols, 57 Yale L J 1165 (1948). There the distinction between the informative and the persuasive functions of trade symbols is made clear. The function which the symbol has in informing the public as to the source of the

goods or services is recognized by the courts in pro-
tecting the first user against the diversion of trade by
confusion of source. The persuasive function of the
symbol alone (i.e., the power which the symbol has,
without reference to its source, to influence the pur-
chase of the product) is not generally protected by
the courts. Brown, Advertising and the Public Inter-
est: Legal Protection of Trade Symbols, 57 Yale L J
1165, 1184, 1187-1194, 1195, n. 124 (1948); Zlinkoff,
Monopoly Versus Competition: Significant Trends in
Patent, Anti-Trust, Trade-Mark and Unfair Competi-
tion Suits, 53 Yale L J 514, 538-541, cases collected
at 539, n. 67 (1944). But cf., Callmann, Unfair Com-
petition Without Competition? The Importance of the
Property Concept in the Law of Trade-Marks, 95 U
Pa L Rev 443, 454-465 (1947); Cohen, Transcendental
Nonsense and the Functional Approach, 35 Colum L
Rev 809, 814-817 (1935). We are of the opinion that
protection should be so limited. The ethical notion
that one should not reap where he has not sown (*In-
ternational News Service v. The Associated Press,* 248
US 215, 39 S Ct 68, 63 L Ed 211, 2 ALR 293 (1918))
is overridden by the need to maintain competition
among sellers by permitting freedom of entry into the
market. Accordingly, monopolies should be fostered
only to the extent provided by way of patents and
copyrights and under the law of unfair competition
as it is applied in most jurisdictions requiring that
confusion of source be shown. *Kellogg Co. v. Nat.
Biscuit Co.,* 305 US 111, 122, 59 S Ct 109, 83 L Ed 73
(1938); *Eastern Wine Corporation v. Winslow-War-
ren, Ltd.,* 137 F2d 955, 959 (2nd Cir. 1943); *Flagg
Manuf. Co. v. Holway,* 178 Mass 83, 59 NE 667 (1901);
Brown, Advertising and the Public Interest: Legal
Protection of Trade Symbols, 57 Yale L J 1165, 1204-

1206 (1948); Zlinkoff, Monopoly Versus Competition: Significant Trends in Patent, Anti-Trust, Trade-Mark and Unfair Competition Suits, 53 Yale L J 514, 551-552 (1944). See, *Cuno Corp. v. Automatic Devices Corp.*, 314 US 84, 92, 62 S Ct 37, 86 L Ed 58 (1941). "The right to compete means the right to imitate. \* \* \* For one to reap with impunity the fruits of another's labor may be reprehensible, but the creation of new species of property interests and new series of monopolies by the courts may be disastrous to free enterprise." Handler, Unfair Competition, 21 Iowa L Rev 175, 189 (1936).

The trial court entered judgment against defendant for the sum of $2,500. As we have already indicated, that judgment was not supported by any evidence of a loss of sales in plaintiff's stores. The only evidence showing pecuniary loss was the loss of the monthly income from one franchise holder for a period of seven months. We have shown that one is not entitled to the protection of a business name except in connection with its use in the sale of merchandise or services to the public. Therefore, plaintiff is not entitled to recover for the loss alleged.

Plaintiff having failed to prove that the trade name used by it acquired a secondary meaning, the decree and judgment of the trial court must be reversed.

Reversed.